684 A.2d 589

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Aaron GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 11, 1996.

Filed Oct. 2, 1996.

658

Leon W. Tucker, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BECK, KELLY and SCHILLER, JJ.

SCHILLER, Judge.

Appellant, Aaron Griffin, appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction on charges of Murder in the First Degree,[1] and Possession of an Instrument of Crime.[2] Appellant was sentenced to an automatic life sentence on the

1. 18 Pa.C.S. § 2502.
2. 18 Pa.C.S. § 907.

murder charge. No additional sentence was given on the possession conviction. We affirm.

FACTS:

The facts of this case, based on the evidence presented at trial, demonstrate the following: In the early morning hours of June 23, 1993, appellant, along with four other individuals, hired a van to facilitate a robbery. Appellant had a .45 calibre handgun with him, and another of the group, Tyree Harold, was carrying a .9mm Tec–9 semiautomatic weapon. The victim, Lavearn Miller, was the driver of the van. He was hired to drive the group to 20th Street and Susquehanna Avenue in the City of Philadelphia where the robbery would take place. This was a service Miller had provided in the past. When they reached 19th Street and Jefferson Avenue, Miller said "I don't want to do it now" and continued driving, now in the direction of the local police station. Appellant, thinking that Miller was going to turn them into the police, reached over from the front passenger seat and shifted the van into park. Miller became frightened and exited the vehicle. He then ran down the 1800 block of Cecil B. Moore Avenue. A shot entered his left arm, which severed a major artery and ultimately caused his death.

After being shot, Miller continued to run towards the police station at 17th Street and Montgomery Avenue. Upon arriving, he collapsed on the sidewalk near the station. Several officers found Miller lying face down and bleeding profusely. One of the officers asked Miller who shot him, and Miller identified the appellant. The police recovered three .9mm shell casings from the street, a beeper that belonged to Tyree Harold, and a .45 calibre clip from the driver's seat in the van.

In a statement given to the police at the time of his arrest, and introduced into evidence by the Commonwealth,[3] appellant confirmed the details about the robbery trip but maintained that Harold was the one who did the shooting. On June 25, police found Tyree Harold dead in a playground, with a .9mm

___

**3.** While appellant acknowledged his *Miranda* rights and freely waived them, he did not sign the statement he gave to the police.

Tec–9 gun on his body. It was later determined that this gun produced the shell casings found on the night Miller was killed. The .45 calibre handgun was found at the house of another of the group who was with Miller and the appellant that night.

DISCUSSION:

Appellant has raised six issues on this appeal, which we set out in the order they are addressed: (1) whether the trial court erred in admitting the statement of the dying victim that identified the appellant as the killer; (2) whether the court erred in admitting evidence that the appellant and the victim were prepared to commit a robbery shortly before the victim was killed; (3) whether the court erred in allowing testimony about the death of Tyree Harold and the gun that was found on his body; (4) whether the court should have held an evidentiary hearing regarding appellant's claim of jury misconduct; (5) whether the court erred in failing to grant his motion for arrest of judgment on the ground that the evidence was insufficient to prove murder; and (6) whether the court erred in failing to grant a new trial on the ground that the jury verdict was contrary to the weight of the evidence.

■ The first issue is whether the trial court improperly admitted the statement of the dying victim identifying the appellant as his assailant. Appellant's counsel objected to the admission of the statement on hearsay grounds; however, the trial court admitted the statement under the dying declaration exception to the hearsay rule. The admissibility of a dying declaration depends on all surrounding circumstances. *Commonwealth v. Knable*, 369 Pa. 171, 175, 85 A.2d 114, 117 (1952).

■ A statement may be considered a dying declaration, and hence admissible notwithstanding its hearsay attributes, if the declarant identifies his attacker, the declarant believes he is going to die, that death is imminent, and death actually results.[4] *Commonwealth v. Frederick*, 508 Pa. 527, 531, 498

---

4. As stated by the Supreme Court, the reliability of a dying declaration is based on the premise that "no one who is immediately going into the

A.2d 1322, 1324 (1985). The admissibility of a statement as a dying declaration is within the trial court's discretion. *Commonwealth v. Frederick, supra,* at 532, 498 A.2d at 1324.

 The testimony regarding the victim's statement identifying the appellant as his attacker came from three police officers who arrived at the scene shortly after the victim was shot. The first officer on the scene, Officer Oliver, testified that when she came upon the victim, he appeared to be scared and excited, "profusely bleeding," and going in and out of consciousness. N.T. April 25, 1995 at 85. Officer Oliver asked what happened to him and the victim replied that he was shot. The officer then asked "who did it" and the victim answered "Aaron." N.T. April 25, 1995 at 86. Another policeman, Officer Ready, testified that there were several officers already present when he came upon the scene, and he could not hear what the victim said to Officer Oliver. He also testified that the victim was conscious but was not responsive to what was being said to him. However, the victim did say to Officer Ready "please get me to the hospital." N.T. April 26, 1995 at 12. A third policeman, Detective Pownall, said that the victim appeared to be exhausted and fearful and lapsing in and out of consciousness. Detective Pownall heard the victim being asked who shot him, and heard the victim answer: "Aaron Griffin." N.T. April 26, 1995 at 17. He also heard the victim say "just let me die." N.T. April 26, 1995 at 16.[5]

Appellant claims that the statement did not meet the requirements of a dying declaration for several reasons.

First, appellant argues that the victim's statements to the officers were inconsistent. This argument is not persuasive. At no time did the victim state that he did not know who the attacker was, or give a name other than Aaron or Aaron Griffin. The victim consistently identified the appellant as his

presence of his Maker will do so with a lie upon his lips." *Commonwealth v. Smith,* 454 Pa. 515, 518, 314 A.2d 224, 225 (1974) (citation omitted).

5. A fourth policeman, Officer Morton, testified that he did not hear the victim respond to Officer Oliver when the victim was asked who shot him.

assailant. Any inconsistencies in the details of what was said could be evaluated by the jury when it decided the weight to be given to the dying declaration. *Commonwealth v. Frederick, supra,* at 532, 498 A.2d at 1324.

■ Next, appellant argues that the victim could not be conscious of his impending death because (1) he was not responsive to the Officers and (2) he was shot in the arm and not in a vital area of his body. A declarant's belief in his imminent demise may be inferred from the surrounding circumstances, including the nature of the declarant's wounds. *Commonwealth v. De Shields,* 335 Pa.Super. 89, 94, 483 A.2d 969, 972 (1984). The victim must be aware of his impending death. *Id.* It is clear that the victim was aware of his impending death: he was bleeding profusely, lying in a large pool of his own blood, was lapsing in and out of consciousness, and said "just let me die." Our Supreme Court has held that the best evidence of the victim's state of mind regarding his impending death is a statement from the victim. *Commonwealth v. Cooley,* 465 Pa. 35, 43, 348 A.2d 103, 106 (1975); *see Commonwealth v. Stickle,* 484 Pa. 89, 398 A.2d 957 (1979) (statement by victim "I'm going to die" showed requisite state of mind). In addition, we have found no cases that require the victim to be injured in the head or a vital organ in order for him to have a sense of impending death. We believe that taken together, the wound, the extensive bleeding, and the victim's statement establish the necessary sense of impending death. *Commonwealth v. Edwards,* 431 Pa. 44, 50, 244 A.2d 683, 686 (1968).

■ Appellant further argues that the statement was inadmissible because the Commonwealth did not prove that the victim actually observed the appellant shoot him, and hence had no personal knowledge of who his assailant was. To be admissible "a dying declaration must be based on observations of the declarant and may not merely be an expression of opinion based on reflection or reasoning." *Commonwealth v. Miller,* 490 Pa. 457, 470–71, 417 A.2d 128, 135 (1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d

842 (1981). However, "dying declarations which contain inferences and conclusions of the declarant from facts which he knows or observes but does not state may be admissible." *Commonwealth v. Knable, supra*, at 176, 85 A.2d at 117. Contrary to appellant's suggestion, proof of the victim's actual observation of the facts declared is not required; instead, what needs to be shown is that the victim had the **opportunity** to observe the facts that he declares. *Commonwealth v. Fugmann*, 330 Pa. 4, 15, 198 A. 99, 105 (1938); McCormick, *On Evidence*, § 285 at 832 (3rd ed.1984). This rule stems from the absence of proof inherent in a dying declaration: a victim who makes a statement that qualifies as a dying declaration is *a fortiori* not available to describe in court what observations and inferences formed the basis of his statement. Where there is room for doubt as to whether the victim's statement is based on personal knowledge, it is a question for the jury. McCormick, *supra*, at 832. It is only when it is clear that the victim had no opportunity to observe the facts that he declares that a dying declaration is inadmissible for want of personal knowledge.

Here the victim was riding with the appellant when the incident which precipitated the fatal event occurred. Appellant's statement provided the details of him and Tyree Harold each carrying a weapon and chasing the victim. Certainly, there was opportunity for the victim to turn around and observe who was shooting at him.[6]

Finally, appellant would have us rule that the victim's statement could not serve as a dying declaration because the victim did not actually die until three days after the statement was made.[7] However, appellant cites us no case with such a

---

**6.** This case is unlike *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938), where a dying declaration was held inadmissible where the victim identified the defendant as the person who sent a bomb via the mail but where the evidence showed that the victim had no personal knowledge of who sent the bomb, and could not possibly have observed who mailed the bomb to him.

**7.** There was no evidence produced at trial to indicate that the victim ever spoke anything else or even regained consciousness after being taken to Temple University Hospital the night of the shooting.

holding, and in fact ignores several decisions to the contrary. *See e.g. Commonwealth v. Smith,* 454 Pa. 515, 314 A.2d 224 (1974) (nine day interval); *Commonwealth v. Knable,* 369 Pa. 171, 85 A.2d 114 (1952) (ten days); *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A.2d 302 (1972) (sixteen days); *Commonwealth v. Stickle,* 484 Pa. 89, 398 A.2d 957 (1979) (one month).

Therefore, we conclude that the trial court did not err in admitting the statement of Lavearn Miller identifying the appellant as his killer. The statement met the requirements of a dying declaration, and it was for the jury to determine its weight. *Commonwealth v. Frederick, supra,* at 532, 498 A.2d at 1324.[8]

■ Appellant raises additional issues concerning evidentiary rulings by the trial court. Such "rulings are committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *Commonwealth v. Cohen,* 529 Pa. 552, 563, 605 A.2d 1212, 1218 (1992).

Appellant argues that the trial court erred in admitting evidence that appellant and Miller were in the midst of planning to rob someone prior to Miller being killed. This evidence came in via a statement by the appellant, and the testimony by Jamal Sanders, who was also in the van that night. Appellant argues that this evidence was not relevant as it was proof of a prior bad act.

■ All relevant evidence is admissible at trial, and relevancy is determined by examining whether the evidence sought to be introduced tends to "establish a material fact or make a fact at issue more or less probable." *Commonwealth v. Cohen, supra,* at 563, 605 A.2d at 1218. It is well established that evidence of prior bad acts is not admissible to show that the defendant committed the crime at issue. *Common-*

**8.** Because we hold that the victim's statement is admissible as a dying declaration, we do not address the Commonwealth's contention that the statement would also be admissible as an excited utterance. We do note, however, that a statement may satisfy the requirements for both a dying declaration and an excited utterance. *See Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315 (1994).

wealth v. Peterson, 453 Pa. 187, 197, 307 A.2d 264, 269 (1973); Commonwealth v. Walker, 540 Pa. 80, 97, 656 A.2d 90, 99 (1995), cert. denied, —— U.S. ——, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). However, there are several well recognized exceptions to this rule, such as when the evidence of the prior bad act tends to prove malice, motive or intent for the offense charged. Peterson, supra; Walker, supra. In addition, evidence of a prior bad act will be admitted where that act "was part of a chain or sequence of events which formed the history of the case and was part of its natural development." Commonwealth v. Walker, supra, at 98, 656 A.2d at 99 (citations omitted). This exception, also known as the "complete story" rationale, exists "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Commonwealth v. Lark, 518 Pa. 290, 293, 543 A.2d 491, 497 (1988) (citation omitted).

Here, the evidence of the plan to commit a robbery immediately before Miller was killed was admissible either to complete the story of the crime, or to prove motive. The description of the plan to commit robbery and the use of Miller as a driver provided the context for why the van was later stopped and why Miller started running away from the appellant and the others before he was killed.

Such evidence also goes to show a motive for the appellant to kill Miller. To be admissible under the motive exception, evidence of the prior bad act "must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." Commonwealth v. Martin, 479 Pa. 63, 69, 387 A.2d 835, 838 (1978) (citation omitted). Clearly, a possible reason appellant stopped the van and Miller ran away was the belief, as expressed by the appellant and Jamal Sanders, that Miller was going to the police station to report on the appellant and the others in the van. Such evidence supports a finding that appellant's motive to kill Miller grew out of the events that included the plan to commit the robbery.

As such, this evidence, although characterized as a prior bad act, was relevant and admissible.

Appellant's next evidentiary challenge concerns the testimony of Officer Beveridge describing how Tyree Harold was found two days later, June 25, 1993, shot dead at a playground with a Tec–9 gun on his person. We need not address this contention as we find that appellant did not file a timely objection to this testimony at trial.

At trial, appellant asked for an offer of proof regarding this testimony; a sidebar conference was conducted. The Commonwealth argued that this testimony should be admitted to show the chain of custody of the Tec–9 gun. Appellant argued that this testimony was not relevant and was highly prejudicial to the defense.[9] The trial judge considered both arguments and ruled that the evidence of the weapon being found on Tyree Harold's body could be admitted for chain of custody purposes, and that he would give a cautionary instruction to the jury if requested to by appellant. Appellant's counsel acceded to this ruling.[10] Officer Beveridge then testified as to his finding Tyree Harold dead with a Tec–9 gun on his body. No objection was raised to this testimony. The trial court then gave a limiting instruction requested by appellant's counsel.[11]

**9.** Appellant's counsel stated: "My concern is for this jury to hear that another person is dead. My client is not charged or in any way connected with that death." N.T. April 26, 1995 at 54.

**10.** The trial court stated:

My ruling is that as long as this witness is confined only to chain of custody of the gun that was recovered from Tyree Harold, his dead body. That's the only purpose for this. If you want a limiting instruction to the jury on how to consider that at any future point in this charge, I will be glad to do it if you just tell me the words that you want me to use.

[APPELLANT'S COUNSEL]: "Well, based on your ruling, I will request it."

N.T. April 26, 1995 at 56–57.

**11.** Immediately after the direct examination of Officer Beveridge, the trial judge stated, "Members of the jury, the testimony you've just received in no way should infer that this defendant had anything to do with the death of Tyree Harold, okay?" N.T. April 26, 1995 at 59.

"In order to preserve an issue for review, a party must make a timely and specific objection at trial." *Commonwealth v. Montalvo,* 434 Pa.Super. 14, 31, 641 A.2d 1176, 1185 (1994) (citation omitted). "A failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission." *Commonwealth v. Bullock,* 359 Pa.Super. 150, 155, 518 A.2d 824, 826 (1986), *alloc. denied.,* 515 Pa. 618, 531 A.2d 427 (1987) (citation omitted). Appellant's counsel did not object to the ruling of the trial court, and in fact acceded to the judge's ruling. As a result we find that appellant has waived his right to argue this issue on appeal.

Appellant has also raised an argument concerning jury misconduct, but we find that this was also waived at trial. At the end of the trial, after the jury found appellant guilty, the appellant stood and exclaimed "That juror [juror # 4] right there knows me. He's my counsel at a juvenile institution, that's why he found me guilty. That's why he found me guilty ... It was misconduct on the jury behalf because John, he was my counselor at Eastern State School and Hospital and he lied to the judge and he told me that he didn't know me. He know me. He was my counselor." N.T. May 1, 1995 at 12–13. When asked by the trial judge when the defendant realized this, appellant answered "After I seen him. I was investigating the whole situation, right, so I called up the place Eastern State School and Hospital. I couldn't recognize. I knew the name so I called the place and I said John." N.T. May 1, 1995 at 13.

It is clear from those statements that the appellant knew of a reason to challenge the ability of juror # 4 to serve before the verdict was reached. Appellant had a responsibility to inform his counsel of his suspicions regarding juror # 4 so that any possible bias could have been examined. This Court has held "[a]n objection to a juror which constitutes good cause for challenge is waived if not made before the juror is sworn. The failure to elicit information which would have been available by questioning results in a waiver of the disqualification." *Commonwealth v. Shirey,* 333 Pa.Super. 85,

105, 481 A.2d 1314, 1325 (1984) (citations omitted). In addition, challenges for cause must be made as soon as the cause is determined. Pa.R.C.P. 1106(E)(2)(c); *Commonwealth v. Berrigan*, 369 Pa.Super. 145, 156, 535 A.2d 91, 96–97 (1987), *alloc. denied*, 521 Pa. 609, 557 A.2d 341, *cert. denied*, 493 U.S. 883, 110 S.Ct. 219, 107 L.Ed.2d 173 (1989). The appellant admitted that he recognized juror # 4 during the voir dire but did not bring this to the attention of his counsel immediately, as he was required to do. As a result, we find that appellant has waived this argument.

Lastly, we address appellant's arguments that the trial court erred (1) in not granting his motion for arrest of judgment because the evidence at trial was insufficient to sustain a first degree murder conviction or (2) in not granting a new trial because the jury verdict was against the weight of the evidence.

▮▮ When reviewing a challenge to the sufficiency of the evidence, it is well established that an appellate court

> must determine whether the evidence was sufficient to enable the jury to find every element of the crime charged beyond a reasonable doubt, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner.

*Commonwealth v. Zimmick*, 539 Pa. 548, 554, 653 A.2d 1217, 1220 (1995).

▮▮ A person is guilty of criminal homicide if he "intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S. § 2501. A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. 18 Pa.C.S. § 2502(a). Intentional killing is defined as "Killing by means of poison, or by laying in wait, or any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). The element of intent may be proven by circumstantial evidence. *Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 448 (1995).

██ In this case, there was evidence that appellant had a motive to kill Lavearn Miller: specifically, to prevent Miller from going to the police station to report on the actions of the appellant in planning the robbery. Additionally, there was the dying declaration of the victim.

In a similar case, the defendant argued that the jury could not convict on first degree murder based on an uncorroborated dying declaration. Our Supreme Court disagreed:

> To accept appellant's present contention that where the link establishing the identity of the perpetrator of the crime is supplied by an uncorroborated dying declaration the evidence must be deemed insufficient as a matter of law, requires a determination that dying declarations must be accorded less weight than other types of admissible evidence. This we decline to do ... **This evidence alone, if believed** (and it apparently was believed by the jury) **was sufficient in law to sustain the verdict.**

*Commonwealth v. Riggins,* 478 Pa. 222, 229, 386 A.2d 520, 523 (1978) (emphasis added). Therefore, we agree with the trial court that there was sufficient evidence to find appellant guilty of murder in the first degree beyond a reasonable doubt.

██ Appellant also contends that the jury verdict was contrary to the weight of the evidence. The standards for evaluating a weight of the evidence claim are well established:

> [O]ur scope of review for such a claim is very narrow. *Commonwealth v. Hamilton,* 376 Pa.Super. 404, 414, 546 A.2d 90, 95 (1988), *allocatur denied,* 521 Pa. 629, 558 A.2d 531 (1989). The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982); *Commonwealth v. Hunter,* 381 Pa.Super. 606, 618, 554 A.2d 550, 555 (1989). Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. *Common-*

*wealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973); *Commonwealth v. Hamilton, supra,* 376 Pa.Super. at 414, 546 A.2d at 95–96. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972). A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Id.; Commonwealth v. Hunter, supra; Commonwealth v. Saksek,* 361 Pa.Super. 173, 522 A.2d 70 (1987). *See also Commonwealth v. Wallace,* 522 Pa. 297, 315, 561 A.2d 719, 728 (1989) (*citing Commonwealth v. Nelson,* 514 Pa. 262, 271, n. 3, 523 A.2d 728, 733, n. 3 (1987), *cert. denied,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987) (under ordinary circumstances, an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record")). *See also Commonwealth v. Jenkins,* 396 Pa.Super. 395, 578 A.2d 960 (1990) and *Commonwealth v. McLean,* 396 Pa.Super. 23, 578 A.2d 4 (1990) (explaining that a challenge to the weight of the evidence is reviewable by the Superior Court).

*Commonwealth v. Rochon,* 398 Pa.Super. 494, 503, 581 A.2d 239, 244–45 (1990).

■■■ In this case, the trial court in its decision denying the motion for a new trial concluded that its "sense of justice has not been shocked," and that "[t]he weight of the Commonwealth's evidence amply supported the verdict." Slip Opinion, *Commonwealth v. Aaron Griffin,* Court of Common Pleas, Philadelphia County, No. 2217–2221/1994 at 6. A review of the record indicates that the main evidence for the defense was the statement of the appellant, the testimony of Jamal Sanders and the testimony of the police officers to the effect that no .45 cartridges or bullets were ever found at the crime scene. The Commonwealth demonstrated that the victim identified the appellant as the killer, and that the appellant had a motive to kill Miller. The jury had evidence on both

sides of the issue, which it obviously weighed in favor the Commonwealth. This was within the jury's province and cannot be disturbed on appeal.

It must be emphasized that it is not for this Court or any appellate court to view the evidence as if it was the jury. Our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. While we can acknowledge that there are competing versions of the events, we cannot say that the trial court's decision was an abuse of discretion.[12]

CONCLUSION:

In conclusion: (1) the identification of the appellant by the victim satisfied the requirements of a dying declaration; (2) the evidence that the appellant and the victim were planning a robbery prior to the victim being killed was admissible to prove motive and to complete the sequence of events; (3) appellant has waived any argument regarding the evidence of Tyree Harold's death by failing to file a timely objection; (4) appellant waived any objection regarding possible jury bias by failing to raise this objection during voir dire; (5) the evidence produced at trial was sufficient to sustain the jury verdict of guilty; and (6) the jury verdict was not contrary to the weight of the evidence.

Consequently, the judgment of sentence entered by the Court of Common Pleas of Philadelphia County is affirmed.

---

12. As we find no error at trial, it is not necessary for us to address the Commonwealth's "harmless error" argument.