# Commonwealth v. Goldhaber

C.P. of Bedford County, no. CR-307 for 2004.

*Gerald P. Morano,* for Commonwealth.
*Samuel C. Stretton,* for defendant.

GEORGE, *J.,* January 26, 2007—The defendant, Douglas R. Goldhaber, appeals from a March 2, 2005 jury verdict wherein Goldhaber was convicted of driving under the influence of alcohol as a misdemeanor of the first degree and three related summary offenses. Goldhaber timely filed post sentence motions which were denied by this court. Although direct appeal was untimely filed, by order dated October 31, 2006, Goldhaber's PCRA petition was granted to the extent that his appellate rights were reinstated.[1] Goldhaber subsequently filed

---

1. Pursuant to agreement of the parties, Goldhaber's right to direct appeal was reinstated for purposes of raising issues properly preserved for direct appeal. Goldhaber's additional claims of ineffectiveness of counsel were stayed pursuant to agreement until the direct appeal issues were resolved. Although this court is aware of the dictates of *Commonwealth v. Miller,* 868 A.2d 578 (Pa. Super. 2005), the parties opted to address those issues properly preserved for direct appeal in lieu of a full evidentiary hearing on the remaining claims of ineffectiveness. The ineffectiveness claims have been preserved pursuant to

a timely notice of appeal. The issues raised by that appeal are identified as follows:

(1) Whether the Commonwealth committed a *Brady* violation by failing to disclose information concerning an alleged contact between the arresting trooper and a potentially exculpatory witness;

(2) Whether the trial court erred in failing to grant a new trial based upon after-discovered evidence;

(3) Whether the suppression court erred in failing to suppress evidence derived from an alleged motor vehicle stop;

(4) Whether the evidence presented at trial was sufficient to support the verdict; and

(5) Whether the jury verdict entered in this matter was against the weight of the evidence.

Since a number of the issues are largely fact driven, it is necessary to review the evidence presented at trial.[2]

On April 9, 2004, Trooper Brad Hershey of the Pennsylvania State Police was in full uniform on routine patrol in Bedford County. Trooper Hershey has been a trooper with the Pennsylvania State Police for approximately 10 years and has received significant training in detecting individuals under the influence of alcohol and driving while intoxicated. He has conducted in excess of 700 traffic stops and administered field sobriety tests to approximately 500 individuals. He has arrested individu-

---

agreement in the event Goldhaber is denied relief on those issues raised by this appeal.

2. Trial testimony is summarized from this court's notes as the court does not have immediate access to the record.

als on suspicion of driving under the influence of alcohol approximately 400 times.

At approximately 9:25 p.m., Trooper Hershey was dispatched to a call at a business located along State Route 30 in Snakes Springs Township, Bedford County. While traveling east on State Route 30 in response to the call, Trooper Hershey observed a vehicle which he believed to be exceeding the posted 35 m.p.h. speed limit in a construction zone. While observing the vehicle, he noticed that the vehicle was not in the proper lane but, rather, was traveling down a center turning lane. He observed this behavior for approximately one-tenth of a mile and noted that there were no obstructions in the right lane causing the deviation. As Trooper Hershey followed the vehicle, he clocked it for nine-tenths of a mile traveling at approximately 55 m.p.h. Once the roadway turned to two lanes, he observed the vehicle cross a double yellow line by approximately six inches followed by movement to the right across the fog line, also by approximately six inches. He observed these same actions later down the road. Trooper Hershey noticed that the vehicle was following a vehicle in front of it very closely at a distance of less than one and a half car lengths. As he continued to follow the suspect vehicle, Trooper Hershey observed it nearly strike a parked vehicle. The operator avoided contact with the parked vehicle by jerking his vehicle back to the left. On a second occasion, Trooper Hershey observed the vehicle again drift towards the right only to be suddenly jerked back to the left side of his lane of travel. After observing the vehicle make a number of quick turns and pull into a private driveway, Trooper Hershey conducted a vehicle stop. Overall, he observed the vehicle over a distance of 5.5 miles.

Upon approaching the vehicle, Trooper Hershey observed Goldhaber as its operator. He also noticed that Goldhaber's movements were slow and deliberate. Having interacted with Goldhaber on previous occasions, Trooper Hershey noted Goldhaber's speech to be slurred. He also noticed his eyes were bloodshot and glassy and a strong odor of alcohol emanated from the vehicle. His clothing was disheveled. He believed Goldhaber to be under the influence of alcohol and requested that he submit to field sobriety tests. Trooper Hershey administered the one-leg stand and walk-and-turn test and opined that Goldhaber failed both. On the one-leg stand, Goldhaber raised his right foot but immediately placed it down and lifted his left foot. Thereafter, he was unable to keep his left foot raised beyond the count of seven. He lowered his foot once again on the count of nine. Goldhaber expressed to Trooper Hershey that he did not wish to continue with the test. During the walk-and-turn test, Trooper Hershey observed Goldhaber to be confused. He also observed that he did not touch his heel to a toe while walking and stumbled off of the line. Based upon his observations during these tests, Trooper Hershey opined that Goldhaber was under the influence of alcohol to the extent that he was incapable of safe driving and placed him under arrest. He was transferred to the Bedford County Emergency Room for purposes of a blood test. Goldhaber, however, refused to take the test, indicating that he was afraid of needles. Goldhaber was taken back to the Pennsylvania State Police barracks and charged with driving under the influence of alcohol.

At trial, the Commonwealth also presented the testimony of Trooper Swartzwelder. Trooper Swartzwelder

is a 17-year veteran of the Pennsylvania State Police and also has significant experience in observing individuals under the influence of alcohol. Trooper Swartzwelder testified that he responded to the vehicle stop and observed Goldhaber performing the field sobriety tests. He concurred with Trooper Hershey's opinion that Goldhaber failed the tests.

Finally, the Commonwealth produced a witness who testified to serving Goldhaber a number of alcoholic drinks on the date in question prior to the vehicle stop.

Initially, I address Goldhaber's challenge to the suppression court's denial of his request to suppress evidence based upon an alleged improper vehicle stop.[3] 75 Pa.C.S. §6308(b) requires that a police officer have a "reasonable suspicion" that a provision of the Vehicle Code is being violated in order to conduct a motor vehicle stop.[4] Instantly, Trooper Hershey observed Goldhaber's vehicle traveling in the wrong lane of travel; committing several unexplained deviations from the lane

3. Although this action arose in Bedford County, due to Goldhaber's status as a public defender of Bedford County, by order dated August 6, 2004, President Judge Daniel Howsare recused himself and appointed the Honorable Judge Kevin A. Hess of the Court of Common Pleas of Cumberland County to preside over this matter. Judge Hess conducted the pretrial suppression hearing, however, due to matters in Cumberland County requiring his attention, was unable to continue to preside over this litigation. Accordingly, President Judge Howsare appointed your undersigned to preside over the remaining proceedings in this matter. Although, as indicated, the Honorable Judge Hess conducted the suppression hearing, I will provide the 1925(b) opinion on this matter as the lack of merit of this issue is obvious.

4. The language referenced herein was added by amendment effective February 1, 2004. It is clearly controlling in this matter as the vehicle stop at issue occurred on April 9, 2004.

of travel by crossing both the yellow line and the fog line on two occasions each; following another vehicle at a dangerously close distance; and being operated in a "quick jerky" manner so as to avoid a collision with parked vehicles. In addition, Trooper Hershey clocked Goldhaber's vehicle on his certified speedometer traveling in excess of 55 m.p.h. in a 35 m.p.h. construction zone for a period of nine-tenths of a mile. As such, Goldhaber's operation of his vehicle falls squarely within the specific prohibitions set forth in sections 3362 and/or 3365 of the Pennsylvania Motor Vehicle Code. Undoubtedly, Trooper Hershey had a reasonable suspicion to stop Goldhaber's vehicle.[5]

Goldhaber's claims of insufficiency of evidence and a jury verdict against the weight of the evidence are equally meritless. The well established test for determining if the evidence is sufficient to sustain a criminal conviction is whether, accepting as true all the evidence of the Commonwealth and all reasonable inferences arising therefrom upon which the jury could have properly reached its verdict, it was sufficient in law to prove beyond a reasonable doubt that the defendant was guilty of the crime of which he stands convicted. *Commonwealth v. Burton,* 450 Pa. 532, 534, 301 A.2d 599, 600 (1973). If, based upon a review of the evidence, the jury could have found every element of the crime beyond a reasonable doubt,

---

5. The amended language of 75 Pa.C.S. §6308(b) has found "reasonable suspicion" to be a standard that requires less than "articulable and reasonable grounds." See *Commonwealth v. Sands,* 887 A.2d 261 (Pa. Super. 2005). Nevertheless, I find that Trooper Hershey's observations not only satisfy a "reasonable suspicion" standard, but also provide "probable cause" to conduct a vehicle stop.

the defendant's conviction must be sustained. *Commonwealth v. Rivera,* 565 Pa. 289, 295, 773 A.2d 131, 135 (2001). On the other hand, a motion for new trial on the ground that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain a verdict but claims that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons,* 833 A.2d 245, 258 (Pa. Super. 2003). A new trial should only be granted when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Griffin,* 453 Pa. Super. 657, 673, 684 A.2d 589, 596 (1996).

In order to sustain a verdict for driving under the influence of alcohol in violation of 75 Pa.C.S. §3802(a)(1), the Commonwealth must prove beyond a reasonable doubt that Goldhaber was the operator of a motor vehicle, and that while operating the vehicle, he was under the influence of alcohol to such a degree as to render him incapable of safe driving. *Commonwealth v. Smith,* 831 A.2d 636 (Pa. Super. 2003), *appeal denied,* 576 Pa. 722, 841 A.2d 531 (2003). In order to establish the second element, it is incumbent upon the Commonwealth to show that alcohol substantially impaired the normal mental and physical faculties required to safely operate a vehicle. *Id.*[6]

---

6. Pursuant to *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and in order to make the charges against Goldhaber a misdemeanor of the first degree, the Commonwealth must prove beyond a reasonable doubt that this is Goldhaber's second offense of driving under the influence of alcohol within a 10-year period. This matter was not submitted to

Viewing the evidence in the light most favorable to the Commonwealth, trial testimony not only included Trooper Hershey's opinion that Goldhaber was incapable of safe driving, but also corroborating testimony as to the impairment of his physical faculties as well as his actual unsafe operation of a motor vehicle. In essence, credible testimony revealed that Goldhaber was operating his vehicle in excess of 20 miles over the speed limit in a posted construction zone. He was unable to operate his vehicle within its lane of travel and, in addition to swerving over both the center line and the fog line, actually operated his vehicle in an improper lane. His operation of the vehicle was accompanied by jerky movements which placed parked vehicles at risk of property damage. Upon interaction with Goldhaber, Trooper Hershey observed classic signs indicating intoxication. Moreover, Goldhaber not only failed the standardized field sobriety tests but was unable to complete one of those tests. Trooper Hershey's observations are corroborated by testimony of a fellow trooper. Finally, Goldhaber refused to provide a sample of his blood for test purposes. This evidence is more than sufficient to support the jury's verdict.

After observation of the testimony at trial, the jury's verdict does not shock this judge's sense of justice. Although Goldhaber attempted to minimize the amount of alcohol which he admittedly consumed, the testimony was unconvincing. Goldhaber's strategy of attempting to discredit the prosecuting trooper and others was flimsy. Rather, convincing trial testimony revealed a vehicle stop

---

the jury as the parties stipulated to the gradation of the charge in light of Goldhaber having previously been convicted of driving under the influence of alcohol within a 10-year period.

of an intoxicated driver. Interestingly, despite being versed in the law, Goldhaber refused the blood test which would have provided compelling evidence as to the extent of his alcohol consumption. Under these circumstances, the jury verdict is not a denial of justice but, rather, a testament to the jury's careful and impartial consideration of the credible evidence submitted at trial.

Goldhaber next alleges that the Commonwealth committed a *Brady* violation by failing to provide exculpatory evidence prior to trial. In support of his claim, Goldhaber claims that the Commonwealth failed to disclose information that Trooper Hershey had interviewed a hospital security guard relative to his observations of Goldhaber on the night in question.[7] Goldhaber claims that the security guard informed Trooper Hershey that he did not notice the odor of alcohol nor observe any objective manifestations of Goldhaber being under the influence of alcohol.

In order to establish a *Brady* violation by the Commonwealth, the defendant is required to prove the following three elements: (1) suppression of the evidence by the prosecution; (2) that the suppressed evidence was favorable to the defendant; and (3) prejudice on the part of the defendant flowing from the Commonwealth's failure to disclose the evidence. *Commonwealth v. Paddy,* 569 Pa. 47, 64-65, 800 A.2d 294, 305 (2002). The requirement to disclose exculpatory evidence does not require law enforcement to "make a complete and detailed accounting to the defense of all [possible] investigatory

---

7. Due to Goldhaber being the Bedford County Public Defender, the Bedford County District Attorney's Office also recused itself. Accordingly, the attorney general's office represented the Commonwealth.

work on a case." *Commonwealth v. Appel,* 547 Pa. 171, 203, 689 A.2d 891, 907 (1997). Also, *Brady* does not require the production of information which is merely "not inculpatory." *Commonwealth v. Santiago,* 439 Pa. Super. 447, 464, 654 A.2d 1062, 1071 (1994). Where the defendant knew, or with reasonable diligence could have known, of such evidence, a *Brady* violation does not follow. *Paddy,* 569 Pa. at 65, 800 A.2d at 305.

At hearing on Goldhaber's post sentence motions, the Commonwealth established that the name of the witness at issue was provided to Goldhaber prior to trial. Although the police report did not include a substance of any alleged statements made by the witness, it appears, at best, that the Commonwealth's understanding of the statement was that the witness had made no observations. Despite having the opportunity to do so, the defense did not call the witness at the post-trial hearing to establish the substance of any exculpatory statements he may have provided the police. Since the burden is on Goldhaber to establish the exculpatory nature of the evidence allegedly suppressed by the Commonwealth, *Paddy, supra,* Goldhaber's post sentence motion asserting a *Brady* violation was denied. Moreover, since it is undisputed that the witness was identified by the Commonwealth prior to trial, reasonable investigation by Goldhaber would have revealed the nature of the evidence, if any, which the witness could have provided.

Similarly, Goldhaber's post sentence motion for new trial based upon the discovery of new evidence must fail. In order to be granted a new trial based upon after-discovered evidence, a party must show that the evidence: (1) has been discovered after the trial and could not have

been obtained at or prior to conclusion of the trial by the exercise of reasonable diligence; (2) it is not merely cooperative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such a nature that a different verdict will likely result if a new trial is granted. *Commonwealth v. McCracken,* 540 Pa. 541, 549, 659 A.2d 541, 545 (1995). As previously mentioned, although provided the opportunity to do so at a post-trial hearing, Goldhaber has failed to present any testimony in support of any of the elements necessary for a new trial based upon after-discovered evidence. Moreover, it is relatively clear that through the exercise of reasonable diligence, the proffered testimony should have been discovered prior to trial, since Goldhaber was in possession of the identity of the individual. Absent the means to evaluate the importance of the proffered testimony and whether or not, in fact, it constituted after-discovered evidence, Goldhaber's post-trial motion on this basis was properly denied.

For the foregoing reasons, it is respectfully requested that the sentence of the trial court be affirmed.