J-A18034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD WILLIAM BEACH | : | |
| | : | |
| Appellant | : | No. 1060 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 28, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001554-2016

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                      **FILED: APRIL 14, 2021**

Appellant Richard William Beach appeals from the judgment of sentence imposed following his convictions for rape, aggravated indecent assault, unlawful contact with minors, corruption of minors, involuntary deviate sexual intercourse (IDSI)—forcible compulsion, IDSI—person less than sixteen years old, indecent exposure, indecent assault—forcible compulsion, simple assault, and endangering the welfare of children.[1]  Appellant argues that the trial court violated his constitutional right to self-representation by ordering standby counsel to cross-examine certain witnesses.  We affirm.

The underlying facts of this matter are well known to the parties.  ***See*** Trial Ct. Op., 1/14/20, at 2-4.  Briefly, Appellant was charged with multiple offenses based on allegations that he sexually abused K.H., his minor step-

_____

[1] 18 Pa.C.S. §§ 3121 (a)(1), 3125, 6318(a)(1), 6301(a)(1)(i), 3123(a)(2), 3123(a)(7), 3127, 3126(a)(2), 2701(a)(1), and 4304(a)(1), respectively.

daughter, and K.B., his biological daughter, over a period of approximately three years, beginning in 2014 when they were approximately thirteen and fourteen-years old.

The matter proceeded to a jury trial, which was scheduled to begin on December 3, 2018.[2]  That day, following jury selection, Appellant requested leave to proceed *pro se* and asked the trial court to allow his appointed counsel to remain as standby counsel.  N.T. Trial, 12/3/18, at 4.  The Commonwealth opposed Appellant's request to proceed *pro se* but argued that if the trial court granted his motion, standby counsel should conduct cross-examination of Appellant's immediate family members, including the two victims, K.H. and K.B., and a witness, A.B., who was Appellant's minor son.[3]  **Id.** at 5.   The Commonwealth also objected to Appellant cross-examining Appellant's former live-in girlfriend, H.H., who was also the mother of both K.B. and A.B.  **Id.**

After conducting a colloquy to confirm that Appellant's waiver of counsel was knowing, voluntary, and intelligent, the trial court granted Appellant's

---

[2] Appellant was originally represented by David L. Beyer, Esq., from the Blair County Public Defender's Office.  On September 10, 2018, Attorney Beyer filed a motion to withdraw from representation, citing the breakdown of his relationship with Appellant.  On October 3, 2018, the trial court granted Attorney Beyer's motion and appointed Scott Pletcher, Esq., to represent Appellant for trial.

[3] The Commonwealth argued that if Appellant were permitted to cross-examine the victims, it would be "another way to re-victimize them."  N.T. Trial, 12/3/18, at 5.  The Commonwealth also alleged that Appellant had "numerous contacts" with his minor son, A.B., throughout the case, and that he had "attempted to influence his son" and to "twist" the evidence in his favor.  **Id.**

motion to proceed *pro se*. **Id.** at 5-20. The trial court also granted Appellant's

request for appointed counsel to act as standby counsel. **Id.** at 20.

Thereafter, the following exchange occurred:

THE COURT: So in regards to any witness proffered by [the] Commonwealth[,] the defense has the right to cross-examine that witness, however, the manner and scope of cross-examination are completely in the discretion of the court. In regards to an alleged victim in the matter or anyone who represents credibly that they are in fear of [Appellant], the court would permit cross-examination by the defense in the person of [standby counsel]. [Appellant] could give [standby counsel] a list of questions that he wants asked to the victims, the court will allow time for that kind of exchange, but it would be [standby counsel] who would conduct the examination, if necessary, to approach the witness it would be [standby counsel] who would approach the witness. This ruling would not apply to Commonwealth witnesses who were not alleged victims or family members or persons who knew [Appellant] personally such that they could assert credibly that they would be intimidated or feel threatened or uncomfortable by the questioning so it wouldn't apply to apply to Commonwealth professional witnesses such as police officers, expert witnesses, lab technicians, other people like that, do you understand the court's ruling [Appellant]?

[Appellant]: Your Honor is it my understanding from what you said that as long as they say that they are afraid of me you're saying I cannot question them is that what you're saying Your Honor?

THE COURT: No I'm not saying that. I'm saying you can question them, however, you personally can't question them, you would be questioning them through the vehicle of your standby counsel[.]

[Appellant]: Can I have a knowledge of who I can and cannot question myself Your Honor because I'm confused on that.

THE COURT: From the Commonwealth, who would you assert that you would be asking that [Appellant] not cross-examine them personally[?]

[The Commonwealth]:  [H.H.], [K.B.], [K.H.], [A.B.].

[Appellant]:  Your Honor those are the bulk of my questions to the people, I understand [K.B. and K.H.], I understand that.  As far as [H.H. and A.B.] . . . I object.

THE COURT:  So before each witness is called to the witness stand ordinarily outside the presence of the jury, we ask for an offer of proof as to that witness' testimony. Normally the witness[] is present during that offer of proof. If it's so desired, we can make inquiry of the witnesses on the record as to whether . . . they would feel intimidated or afraid by you--specifically the court's making a ruling right now, we're not even going to ask the question, the alleged named victims who are alleging that you sexually assaulted them or assaulted them in other ways we are not going to permit you to directly question those people.  The other people who are not direct-alleged victims and that would include [H.H. and A.B.] . . .

Those people indicate on the recorded record that they would be uncomfortable being questioned directly by you because of their degree of familiarity with you or knowledge of you then we will--- the ruling will be that you may question them, you may cross-examine them, but only through the vehicle of [standby counsel] and not directly address them yourself[,] do you understand the court's ruling sir?

[Appellant]:  Can you give me one second Your Honor.

THE COURT:  So [Appellant,] just to make it clear.  The court's ruling would not only protect the witnesses from being potentially intimidated for you.  It would also protect you from the image that that would portray to the jurors who may consider that to be additional or re-victimization of the victim by you so those are two reasons the court would not allow you to ask the direct alleged victims questions.  It would [i]nure their harm or it could [i]nure to your harm.

[Appellant]:  Yes, Your Honor I understand that.  What I was looking over here I was looking over the witness list.  Out of this whole entire witness list, the five people that lived in the house where the alleged actions--- was--- whatever--- they're saying that out of that I cannot question any of them if---well I understand that too ---I understand [K.B. and K.H.] I get that.

- 4 -

What I'm not understanding is the [reasoning on A.B.] and then [H.H.], I didn't understand the [H.H.] or [A.B.]?

THE COURT: [H.H.] is who to you?

[Appellant]: My ex-girlfriend of 15 years.

THE COURT: If she indicates that she would be intimidated by your questioning her then that'll be the ruling. If she indicates that she wouldn't then that'll be the ruling, and [A.B.] is a minor child correct? Okay [A.B.] is a minor child. The Court needs to be more protective of minor children than adults and as a minor he wouldn't necessarily even get to make a decision like that on his own behalf. Frankly, a parent would have to make it for him. Who's [A.B.]'s parent?

The Commonwealth: [Appellant] and [H.H.], Your Honor.

THE COURT: Okay so in this matter--- in the unique situation in this matter you would not get to make that decision on his behalf but his mother could have input. The court would still reserve the right in regards to a minor child to be protective of the minor child if I thought it was going to be intimidating or extremely uncomfortable or prevent the minor child from being able to testify if he was questioned directly by you, the court's gotta make a ruling that permits testimony to be drawn forward, to be aired and considered by the jury and take in whatever manner they take it.

[Appellant]: Yes, Your Honor.

*Id.* at 35-39 (some formatting altered).

The following day, after standby counsel cross-examined both K.B. and K.H., the trial court held a conference outside the presence of the jury. *See* N.T. Trial, 12/4/18, at 127. At that time, the Commonwealth made an offer of proof as to H.H.'s trial testimony.[4] *Id.* At the conclusion of the offer, the Commonwealth reiterated that H.H. was concerned with the possibility of

_____

[4] Appellant stated that he had no objection to H.H.'s proffered testimony. *See* N.T. Trial, 12/4/18, at 127.

Appellant directly cross-examining her son, A.B. *Id.* at 129. In response, the trial court stated that, based on "the Pennsylvania Rules of Evidence and case law about the need to protect witnesses and the general need that has increased to protect minor witnesses," standby counsel must conduct cross-examination of A.B. *Id.* at 129. Appellant did not object to the trial court's ruling on A.B without a colloquy of A.B. *Id.*

Shortly thereafter, the Commonwealth conducted a colloquy of H.H. concerning the issue of cross-examination. *Id.* H.H. stated that Appellant emotionally and sexually abused her and that she would suffer emotional turmoil if Appellant were permitted to personally cross-examine her. *Id.* at 132-34. Appellant did not object to the colloquy or ask any additional questions. *See id.* Ultimately, the trial court ordered standby counsel to conduct cross-examination of H.H., noting that if Appellant "asked her questions[,] because of the past abuse she has described at his hands, she may be intimidated or prevented from coming forward with the full amount of information that the jury would need to consider." *Id.* at 134-35. Appellant did not object to the trial court's ruling as to H.H. *Id.* at 135.

Standby counsel subsequently conducted cross-examination of both A.B. and H.H. without objection by Appellant. *See id.* at 152-171, 174-75. The record demonstrates that Appellant performed the duties of counsel in all other respects, which included cross-examining the Commonwealth's other witnesses, participating in sidebar conferences, and presenting closing argument.

On December 7, 2018, the jury found Appellant guilty of all charges. On May 28, 2019,[5] the trial court sentenced Appellant to an aggregate term of 81 to 162 years' incarceration.

Appellant, through counsel, filed a timely post-sentence motion, which the trial court denied. Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.[6] The trial court issued a Rule 1925(a) opinion concluding that Appellant waived his challenge to standby counsel's role in cross-examination by failing to timely object at trial. *See* Trial Ct. Op. at 9-13.

On appeal, Appellant raises the following issue:

Whether the trial court denied [Appellant] the constitutional right to represent himself by ruling that he could not conduct direct and cross-examination of certain witnesses?

Appellant's Brief at 4.

Appellant claims that the trial court violated his right to self-representation by precluding him from cross-examining the minor victims, K.B. and K.H., and two witnesses, A.B. and H.H. *Id.* at 11. Appellant argues

---

[5] Appellant's sentencing hearing was originally scheduled for May 14, 2019. At that time, Appellant asked the trial court to continue the proceeding and appoint new counsel on his behalf. The trial court granted Appellant's request for new counsel and rescheduled the sentencing hearing for May 28, 2019.

[6] In his Rule 1925(b) statement, Appellant raised multiple issues that he does not include in his brief. Therefore, we conclude that he has abandoned those issues on appeal. *See Commonwealth v. Rodgers*, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

that he preserved his objection to standby counsel's participation prior to the start of trial. *Id.* Specifically, with respect to K.B. and K.H., he asserts that although he "indicated that he understood the trial court's ruling[,]" he "was not asserting that he agreed" with it. *Id.* at 12. As to A.B. and H.H., Appellant asserts that he explicitly objected at the outset of trial, which was sufficient to preserve his instant claim. *Id.* at 14 (citing N.T. Trial, 12/3/18, at 36).

Appellant also argues that the trial court failed to "follow the mandates of *Tighe*" by finding a "presumption of trauma as to any witness that was a minor," including K.B., K.H., and A.B., without conducting a colloquy of each individual. *Id.* at 15 (citing *Commonwealth v. Tighe*, 184 A.3d 560 (Pa. Super. 2018) (*Tighe I*), *aff'd*, 224 A.3d 1268 (Pa. 2020) (*Tighe II*) (plurality)). Further, with respect to H.H., Appellant argues that although the trial court conducted a colloquy, H.H. was "a witness, not a victim." *Id.* Therefore, Appellant contends that the trial court "went further than this Court in *Tighe [I]* held was appropriate" by limiting his right to personally cross-examine H.H. *Id.*

The Commonwealth responds that Appellant waived his claims by failing to timely object. Commonwealth's Brief at 13-14. With respect to the minor victims, the Commonwealth asserts that Appellant agreed with the trial court's ruling and did not object when the victims ultimately testified at trial. *Id.* (citing N.T. Trial, 12/3/18, at 36). Regarding A.B., the Commonwealth asserts that "Appellant failed to timely object at critical, timely moments before A.B.'s testimony on [the] second and fourth days of trial." *Id.* at 14. Further, as to

H.H., the Commonwealth notes that "when given the opportunity, Appellant did not cross-examine H.H. on the details of her colloquy." ***Id.*** at 15. Moreover, the Commonwealth asserts that Appellant did not "interpose a timely objection to standby counsel performing H.H.'s cross examination after her colloquy, or prior to her direct examination by the Commonwealth, or prior to her cross examination by standby counsel." ***Id.***

Even if properly preserved, the Commonwealth argues that the trial court's rulings were proper. ***Id.*** at 31. The Commonwealth contends:

> Whether analyzing the trial court's decision in terms of the emotional trauma awaiting Appellant's family in the witness stand or the forfeiture by Appellant's misconduct,[7] the totality of the record clearly documents ample support for Appellant's cross examination to be conducted via standby counsel.

***Id.*** at 30.

Initially, we note that the "scope and manner of cross-examination are within the sound discretion of the trial court and will not be overturned unless the court has abused that discretion." ***Commonwealth v. Nunn***, 947 A.2d 756, 761 (Pa. Super. 2008) (citation omitted). "A defendant's right to act as his own counsel has long been recognized under the law . . . . [I]t is implicit

---

[7] With respect to forfeiture, the Commonwealth contends that Appellant forfeited his right to self-representation by continuously failing to follow the trial court's instructions and often "inserting editorial comments calculated to prejudice the jury." Commonwealth's Brief at 24. Further, the Commonwealth argues that Appellant "overstepped" the boundaries so often "that it defies logic to argue he would not have done the same if given the opportunity to examine witnesses who were either victims of Appellant or over who Appellant wielded a position of authority or trust." ***Id.*** at 26. However, the trial court did not discuss forfeiture as a basis for its ruling.

in the Sixth Amendment to the United States Constitution and explicit in Article I, Section 9 of the Pennsylvania Constitution." ***Tighe II***, 224 A.3d at 1280; *see also **Faretta v. California***, 422 U.S. 806, 821 (1975). "Whether that right was violated presents a question of law, for which our review is *de novo*." ***Tighe I***, 184 A.3d at 566 (citation omitted).

A defendant's right to self-representation is not absolute. ***Commonwealth v. Brooks***, 104 A.3d 466, 474 (Pa. 2014). To exercise the right to self-representation, a "defendant must demonstrate that he knowingly, voluntarily and intelligently waives his right to counsel." ***Id.*** (citation omitted); ***see also*** Pa.R.Crim.P. 121(A)(2). In such cases, the trial court may also appoint standby counsel, who "shall be available to the defendant for consultation and advice." Pa.R.Crim.P. 121(D).

Although defendants do not have a right to hybrid representation, there is no "absolute bar on standby counsel's unsolicited participation" in a *pro se* defendant's trial. ***McKaskle v. Wiggins***, 465 U.S. 168, 176 (1984); ***see also Commonwealth v. Fletcher***, 986 A.2d 759, 778 n.23 (Pa. 2009) (discussing ***McKaskle*** and reiterating that "[t]here are no Sixth Amendment impediments to a defendant's right to self-representation resulting from standby counsel acting as counsel or even taking an active role in the proceedings" (citations omitted)). Further, a defendant may forfeit or waive his right to self-representation even after it has been invoked. ***See Tighe II***, 224 A.3d at 1281 (holding that a defendant may forfeit his right to self-representation by engaging in "serious and obstructionist misconduct," such as witness

intimidation, which "compromise[s] the core truth-determining function of a trial"); *see also McKaskle* 465 U.S. at 188 (stating that "a defendant can waive his *Faretta* rights" through his own conduct at trial, such as soliciting or acquiescing to certain types of participation by standby counsel).

In *Tighe II*, our Supreme Court granted review to consider, but ultimately declined to address, whether a trial court can limit a *pro se* defendant's right to self-representation by ordering standby counsel to conduct cross-examination of a witness. *Tighe II*, 224 A.3d at 1281 n.22. Notably, the High Court expressed disapproval for the rationale that a victim's "potential emotional trauma arising from being personally cross-examined by her abuser could be proved absent specific, targeted evidence." *Id.* at 1280 n.19 (citation omitted). The Court continued that, "[i]f there is a parallel between limitations of the confrontation and self-representation rights guaranteed by the Sixth Amendment and Article I, Section 9 of the Pennsylvania Constitution, relevant evidence would presumably be required to justify those limitations in any given case." *Id.*

"The denial of the right to proceed *pro se* cannot be harmless, and a violation requires a new trial." *Tighe I*, 184 A.3d at 566 (citation omitted); *see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908, 1910 (2017) (discussing *McKaskle* and reasoning that because a violation of a defendant's right to self-representation constitutes a structural error, "where there is an objection at trial and the issue is raised on direct appeal, the defendant generally is entitled to 'automatic reversal' regardless of the error's actual

'effect on the outcome'" (citation omitted)). Nonetheless, our Supreme Court has held that a structural error does not automatically render an issue non-waivable. ***See In re T.S.***, 192 A.3d 1080, 1087 (Pa. 2018). It is well settled that "[i]n order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived." ***Commonwealth v. Russell***, 209 A.3d 419, 429 (Pa. Super. 2019) (citation omitted); ***see also Commonwealth v. Robinson***, 931 A.2d 15, 22 (Pa. Super. 2007) (reiterating that even "claims of a constitutional dimension can be waived" (footnote omitted)).

> This Court has explained that we
>
> will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. The principal rationale underlying the waiver rule is that when an error is pointed out to the trial court, the court then has an opportunity to correct the error. By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial. Additionally, the appellate court should not be required to waste judicial resources correcting a problem that the trial court could have easily corrected if it had been given the opportunity to avoid the necessity of granting a new trial.

***Russell***, 209 A.3d at 429 (formatting altered and citation omitted).

In the instant case, the trial court concluded that Appellant waived his challenge to standby counsel's participation in cross-examination by failing to timely object. ***See*** Trial Ct. Op. at 9-12. With respect to the minor victims,

K.B. and K.H., the trial court found that Appellant "clearly conceded" to the Commonwealth's request prior to trial. *Id.* at 10.

Based on our review, the record confirms that Appellant explicitly agreed to allow standby counsel to cross-examine both K.H. and K.B. *See* N.T. Trial, 12/3/18, at 36 (reflecting Appellant's position that, although he had an objection to the Commonwealth's request as to H.H. and A.B., he understood the reasoning with respect to the minor victims). Therefore, we agree with the trial court that he cannot challenge that ruling on appeal. *See Russell*, 209 A.3d at 429; *Commonwealth v. Griffin*, 684 A.2d 589, 595 (Pa. Super. 1996) (finding an issue waived for appellate review where the defendant acceded to the trial court's ruling); *see also McKaskle*, 465 U.S. at 182 (stating that "[p]articipation by counsel with a *pro se* defendant's express approval is, of course, constitutionally unobjectionable").

As to H.H., the trial court noted that Appellant did not raise any objection during H.H.'s colloquy, nor did he object to the trial court's ruling at the time it was made. *See* N.T. Trial, 12/4/18, at 134-35. While Appellant suggests that he properly preserved this issue at the start of trial, the record establishes that Appellant's initial objection was in response to the Commonwealth's request and within the context of asking the trial court for clarification on the ruling. *See* N.T. Trial, 12/3/18, at 36. Significantly, after the Commonwealth conducted a colloquy of H.H. and elicited testimony that H.H. would suffer emotional harm if Appellant personally conducted cross-examination, Appellant did not object. N.T. Trial, 12/4/18, at 132-34. Likewise, Appellant

failed to object when the trial court definitively ruled that standby counsel must cross-examine H.H. *See id.* at 134-35. Therefore, to the extent Appellant claims that the trial court improperly limited his right to self-representation, he failed to preserve this issue when the trial court had an opportunity to correct the alleged error. *See Russell*, 209 A.3d at 429. Therefore, Appellant's claim is waived. *See id.*

As to A.B., the trial court stated that Appellant "did not object to his stand-by counsel conducting the cross-examination" when A.B. testified. Trial Ct. Op. at 12. To the extent the trial court suggests that Appellant was required to object at the precise moment when standby counsel cross-examined A.B., we disagree. Nonetheless, the record reflects that while Appellant initially opposed the Commonwealth's request for standby counsel to cross-examine A.B., Appellant did not object when the trial court ultimately ruled on the matter during the second day of trial. *See* N.T. Trial, 12/4/18, at 129. Further, as noted by the trial court, Appellant did not raise an objection with respect to A.B.'s cross-examination at any point thereafter. Under these circumstances, we conclude that Appellant waived his claims regarding A.B. by failing to raise the issue when the trial court had an opportunity to address the alleged error or conduct an on-the-record colloquy. *See Russell*, 209 A.3d at 429. Accordingly, Appellant's claim has not been preserved for appellate review. *See id.*

In sum, we are constrained to conclude that because Appellant failed to object to standby counsel's participation at the time of the trial court's rulings,

he cannot now claim that the trial court's actions violated his right to self-representation or impermissibly limited his right to confrontation.[8]  ***See Russell***, 209 A.3d at 429.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/14/2021

---

[8] In light of our conclusion that Appellant waived his challenge to standby counsel's participation, we need not address Appellant's argument regarding the absence of a colloquy for A.B. or the trial court's application of ***Tighe***. Likewise, we do not address the Commonwealth's discussion of forfeiture.