J-S62030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRELL JOHNSON, | |
| Appellant | No. 3080 EDA 2013 |

Appeal from the Judgment of Sentence of March 24, 2010
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010412-2008

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 08, 2014**

Appellant, Darrell Johnson, appeals from the judgment of sentence entered on March 24, 2010.  We affirm.

The trial court accurately summarized the factual background of this case as follows:

> In the early morning of December 24, 2007, [Appellant] confronted his cousin Tyrone Coleman ["(Coleman)"] on the corner of 5300 Delancey Street in the City and County of Philadelphia about money he was owed.  Curtis Johnson [("Johnson")], another cousin of Appellant, was an eyewitness to the argument. During the course of the argument, Appellant pulled out a black semi-automatic handgun.  Coleman said, "What are you going to do, shoot me . . . You're not going to shoot me."  Appellant did in fact shoot Coleman once in the neck.
>
> Tianna Thomas was walking on Delancey Street with two [] friends when she saw [Appellant] shoot [] Coleman.  She gave a full statement and identified [Appellant] from a photo array.

Appellant and Johnson left Coleman in the street and went to Helen Durham's [("Durham's")] house where they discussed the shooting in Isaac Whitaker's [("Whitaker's")] presence. [] Whitaker also had been with [Appellant] and [] Johnson earlier in the evening at Durham's house. Whitaker and [] Johnson were upset with [Appellant] because [] Coleman was their cousin. Both men gave statements to law enforcement. [] Johnson also testified at the preliminary hearing.

[] Coleman was pronounced dead at the scene having sustained a single fatal gunshot wound to his neck which severed the carotid artery. One [] .38 caliber fired cartridge casing was recovered from the sidewalk.

Trial Court Opinion, 11/10/10, at 1-2 (internal citations omitted).

The procedural history of this case is as follows. On January 6, 2008, Appellant was charged via criminal complaint with first-degree murder,[1] possession of a firearm by a prohibited person,[2] carrying a firearm without a license,[3] carrying a firearm on the streets of Philadelphia,[4] and possession of an instrument of crime.[5] On August 22, 2008, a criminal information charging those same offenses was filed.[6] On March 16, 2010, Appellant was found guilty of first-degree murder, carrying a firearm without a license,

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 6105(a)(2)(i).

[3] 18 Pa.C.S.A. § 6106(a)(1).

[4] 18 Pa.C.S.A. § 6108.

[5] 18 Pa.C.S.A. § 907(a).

[6] However, the possession of a firearm by a prohibited person charge was changed from a violation of section 6105(a)(2)(i) to a violation of section 6105(a)(1).

carrying a firearm on the streets of Philadelphia, and possession of an instrument of crime. On March 24, 2010, Appellant was sentenced to an aggregate term of life imprisonment without the possibility of parole.

Appellant filed a timely notice of appeal. This Court dismissed the appeal for failure to file a brief. *Commonwealth v. Johnson*, 1072 EDA 2010 (Pa. Super. May 10, 2011) (*per curiam*). On March 23, 2012, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546. Counsel was appointed and on September 23, 2013 the PCRA court granted Appellant's petition and reinstated his direct appeal rights *nunc pro tunc*. This timely appeal followed.[7]

Appellant raises three issues for our review:

1. Is the [Appellant] entitled to an arrest of judgment on all charges where the evidence is insufficient to sustain the verdict?

2. Is the Appellant] entitled to a new trial as the result of [] error where the [trial c]ourt permitted the reading of [p]reliminary [h]earing transcripts on the theory that the witness was unavailable when such a showing was never demonstrated?

3. Is the [Appellant] entitled to a new trial where the verdict is not supported by the greater weight of the evidence but rather, where the verdicts rests on speculation, conjecture[,] and surmise?

Appellant's Brief at 3.

---

[7] The trial court did not order a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) with respect to this *nunc pro tunc* appeal. However, the trial court did issue a Rule 1925(a) opinion when Appellant filed his original notice of appeal.

Appellant first contends that the evidence was insufficient to find him guilty of first-degree murder.[8] "Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). In reviewing a sufficiency of the evidence claim, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Kearney**, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted). "Additionally, the evidence at trial need not preclude every possibility of innocence. . . . [T]he fact-finder is free to believe all, part[,] or none of the evidence." **Commonwealth v. Trinidad**, 90 A.3d 721, 728 (Pa. Super. 2014) (citation omitted).

"To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." **Commonwealth v. Burno**, 94 A.3d 956, 969 (Pa. 2014) (citation omitted). Appellant concedes that the first two elements of first-degree murder are satisfied. However, Appellant contends that the

---

[8] Although Appellant's question presented states that he is challenging the sufficiency with respect to all charges, the argument section of his brief makes clear that he is only challenging the sufficiency of the evidence as it relates to his first-degree murder conviction.

short confrontation on the streets of Philadelphia, followed by Coleman daring Appellant to shoot him, did not evidence a specific intent to kill.

"[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact the design to kill can be formulated in a fraction of a second." *Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009) (internal quotation marks and citation omitted). Our Supreme "Court has held that evidence of death by gunshot to a vital organ of the body may be sufficient to establish the requisite intent for first-degree murder." *Commonwealth v. Morales*, 91 A.3d 80, 88 (Pa. 2014) (citations omitted); *Burno*, 94 A.3d at 969 (citation omitted) (same); *Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014) (citation omitted) (same). In this case, the evidence presented was that Appellant shot Coleman in a vital part of his body, *i.e.*, his neck. *See Commonwealth v. Montalvo*, 956 A.2d 926, 933 (Pa. 2008) (neck is a vital part of the body); *Commonwealth v. Blakeney*, 946 A.2d 645, 652 (Pa. 2008) (same). This evidence alone was sufficient for the jury to conclude that Appellant acted with the requisite specific intent to kill. Accordingly, Appellant's first issue is without merit.

Appellant next contends that the trial court abused its discretion by permitting Johnson's preliminary hearing testimony to be read at trial. The Commonwealth, relying upon *Commonwealth v. Colon*, 846 A.2d 747 (Pa. Super. 2004), *appeal denied*, 870 A.2d 320 (Pa. 2005), and

*Commonwealth v. Griffin*, 684 A.2d 589 (Pa. Super. 1996), contends that this issue is waived. We disagree. We adopt this Court's reasoning in *Commonwealth v. Stokes*, 78 A.3d 644 (Pa. Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014).

> [I]t can hardly be said that [A]ppellant "acceded" in the trial court's disposition of [the Commonwealth's] motion *in limine*. . . . Both *Colon* and *Griffin* found that counsel "acceded" to the trial [court's] ruling. *Colon*, 846 A.2d at 752; *Griffin*, 684 A.2d at 595. Black's Law Dictionary, Eighth Edition, defines "accede" as "to consent or agree," or "to adopt." Instantly, on [March 10, 2011, prior to testimony beginning,] the trial court ruled on [the Commonwealth's] motion *in limine*:
>
> * * *
>
> Clearly, while [A]ppellant did not expressly object to the ruling of the trial court, neither did he consent or agree to the ruling. Appellant did not accede to the ruling . . . as in *Colon* and *Griffin*. Once the trial court made its ruling on [the Commonwealth's] motion *in limine*, it was final and conclusive. [*Commonwealth v. Metzer*, 634 A.2d 228, 234 (Pa. Super. 1993).] We fail to see how the issue is not adequately preserved for appeal.

*Stokes*, 78 A.3d at 653. As we conclude that Appellant has preserved this issue for appellate review, we proceed to assess the merits of his claim.

"[T]he introduction of an unavailable witness'[] prior recorded testimony from a preliminary hearing is admissible at trial . . . provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing." *Commonwealth v. McCrae*, 832 A.2d 1026, 1035 (Pa. 2003) (citations omitted). In this case, Appellant does not allege that he was denied counsel or was not afforded an opportunity to fully cross-

- 6 -

examine Johnson at the preliminary hearing. Instead, he argues that the Commonwealth did not prove that Johnson was unavailable.

"Where the Commonwealth seeks to admit a missing witness'[] prior recorded testimony, a 'good faith' effort to locate the witness must be established." *Commonwealth v. Wayne*, 720 A.2d 456, 467 (Pa. 1998) (citation omitted). "It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing witness, and the decision of the court will not be overturned absent an abuse of discretion." *Commonwealth v. Lebo*, 795 A.2d 987, 990 (Pa. Super. 2002) (citations omitted).

In this case, the Commonwealth presented the testimony of Detective Steven Mostovyk, Officer Anthony Washington, and Officer James Cook. Detective Mostovyk testified that he went to Johnson's last known address, his mother's house, five or six times in an attempt to locate Johnson. N.T., 3/9/10, at 32. Those visits began two weeks prior to trial commencing. *Id.* It included one visit on the first day of trial. *Id.* During those visits, Detective Mostovyk and his partner would knock on the door and ask Johnson's mother if he were present. *See id.* Detective Mostrovyk left his name and phone number with Johnson's mother in case she learned of her son's location. *See id.* at 33.

Officer Washington testified that Johnson lived directly across the street from the 18th district police station in Philadelphia. *Id.* at 38. Officer

Washington testified that he visited Johnson's last known address on multiple occasions. *Id.* Johnson's mother claimed he had moved out a year prior but that she did not know his new address or his phone number. *Id.* Officer Washington knew this to be false from his patrols of the area during the previous two months during which time he regularly saw Johnson. *Id.* at 39. Officer Washington also waited outside of the bar that Johnson frequented at closing time to see if Johnson would emerge. N.T., 3/9/10, at 38. Officer Washington also routinely patrolled the block where Johnson's girlfriend lives in an attempt to locate Johnson. *Id.*

Officer Cook testified that he, along with his partner, went to Johnson's last known residence several times in the three weeks prior to trial. *Id.* at 43. He testified that he had attempted to reach Johnson at his residence earlier in the day. *Id.* Appellant and the Commonwealth also stipulated that police had searched the morgue, the medical examiner's office, and all local hospitals in an unsuccessful attempt to locate Johnson. *Id.* at 44. They likewise stipulated that all local prisons and Accurint[9] were searched in an unsuccessful attempt to locate Johnson. *Id.* at 47.

Courts in this Commonwealth have found that far less strenuous efforts to locate a witness satisfied the good faith requirement. For example, in *Commonwealth v. Jackson*, our Supreme Court concluded that the Commonwealth's search effort was sufficient to permit the witness'

---

[9] Accurint is a Lexis database used to locate individuals.

prior testimony to be entered into evidence. 344 A.2d 842, 844 (Pa. 1975). In *Jackson*, the only attempt made by police to locate the witness was asking his grandmother if she knew where he was and calling her house. *Id.* When his grandmother testified that he had disappeared the previous night, and that he was known to run away, the trial court permitted the witness' prior testimony to be entered into evidence. *Id.* Our Supreme Court concluded that was not an abuse of discretion. *Id.* In *Commonwealth v. Douglas*, our Supreme Court held that, notwithstanding the Commonwealth's failure to set up surveillance in the housing project where the missing witness lived, the Commonwealth had made a good faith effort in locating the witness. 737 A.2d 1188, 1195–1196 (Pa. 1999).

In this case, Appellant argues that the Commonwealth's search was inadequate for several reasons. First, he argues that it was inadequate because it only began two weeks prior to trial. However, the testimony from the officers shows that they began looking for Johnson at least three weeks prior to trial. Furthermore, the officers had no reason to suspect that they would have to search for months to find Johnson. Officer Washington testified that he regularly saw Johnson in the neighborhood between one and two months prior to trial. Furthermore, in *Jackson* the Commonwealth's search effort was deemed sufficient where the police spent only a few minutes searching for the missing witness while in the case *sub judice* the

Commonwealth expended significant resources over a three week time period in an attempt to locate Johnson.

Appellant also argues that the police did not check federal prisons or the welfare rolls. Such actions are not required. If checking federal prisons were required then it would logically follow that the Commonwealth would be required to check the state prison systems of every state. Such measures go well beyond what is required of a good faith search. Such investigative techniques were not taken in **Jackson** or **Douglas** and yet our Supreme Court determined that the Commonwealth satisfied its obligation to conduct a good faith search in both of those cases. Furthermore, Accurint was searched and did not produce any results. Appellant argues that police made little efforts to check locations frequented by Johnson. Officer Washington testified, however, that he looked for Johnson at the bar he frequented five nights a week. This was a significant effort at locating Johnson.

Appellant also claims that, although officers went to Johnson's mother's house on at least a dozen occasions, they never searched the house. The officers lacked probable cause to believe that Johnson was present in his mother's house or that any crime was committed in that location; therefore, they could not obtain a warrant that would allow them to search his mother's house and detain him. Thus, without consent from Johnson's mother, such a search would have been a violation of the Fourth

Amendment and was therefore not required. Johnson's mother clearly did not want to assist law enforcement hence, her consent was not forthcoming.

The Commonwealth had at least six police officers and detectives attempting to locate Johnson. They searched every location he frequented and did so repeatedly over a three week timeframe. This went well beyond a good faith attempt at locating Johnson. Therefore, we conclude that the trial court did not abuse its discretion in permitting Johnson's preliminary hearing testimony to be entered into evidence.

Finally, Appellant contends that the verdict is against the weight of the evidence. This argument is waived. As this Court has explained, Pennsylvania Rule of Appellate Procedure 2119 compels a finding of waiver "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[.]" *Tosi v. Kizis*, 85 A.3d 585, 589 n.6 (Pa. Super. 2014) (citation omitted). Appellant does not include any argument as to how the verdict was against the weight of the evidence. Although the issue is listed in the questions presented section of his brief, the argument section of his brief only addresses the first two issues raised on appeal. Accordingly, Appellant has waived his claim that the verdict was against the weight of the evidence.

Judgment of sentence affirmed.

J-S62030-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014