445 A.2d 1203

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Norbert Edward PRONKOSKIE, Appellant.**

Supreme Court of Pennsylvania.

May 26, 1982.

Frank E. Garrigan (Court-appointed), Shamokin, for appellant.

Guy W. Schlesinger, Shamokin, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

248

## OPINION

HUTCHINSON, Justice.

For the second time a jury convicted appellant on September 14, 1978 of first degree murder in the shooting of his wife.[1] Post-trial motions were argued before the Court *en banc* and were denied. He appealed his sentence of life imprisonment. We affirm.

Appellant first contends the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt. Specifically, he contends the best the Commonwealth's evidence showed is that he could have arrived home within the one hour range of time during which the Commonwealth established the victim died.

■ In evaluating this contention we view the entire record in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom favorable to the Commonwealth, determine whether there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Smith*, 484 Pa. 71, 398 A.2d 948 (1979); *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977). Moreover, while a criminal conviction may not be based on mere conjecture, the Commonwealth's burden of proof may be sustained by means of wholly circumstantial evidence. *Commonwealth v. Berrios*, 495 Pa. 444, 434 A.2d 1173 (1981).

So viewed, the record reveals the following:

Early in the evening on December 8, 1973 appellant Norbert E. Pronkoskie left the trailer located in a rural area in

---

1. Appellant was first convicted on November 29, 1974. However, this Court reversed that conviction and granted a new trial after holding that the trial court erred in admitting testimony regarding out of court declarations by appellant's three year old daughter, who was in the family residence at the time of the crime. The lower court had refused to admit the direct testimony of appellant's daughter. 477 Pa. 132, 383 A.2d 858 (1978).

the Southwestern portion of Northumberland County which he shared with his wife, Ruby Mae Pronkoskie and their three year old daughter, and drove the quarter mile to the home of Ruby Mae's parents, Ivan and Sophie Boyer and their son, Edward. Sometime between 7:30 p. m. and 8:00 p. m., appellant accompanied Edward and five other young men on a van trip from Ashland to Pottsville thence to Lykens, Gratz and Erdman. All the young men drank beer and appellant consumed about six cans. At about 11:45 p. m. the van returned to the Boyers' residence and Norbert headed the quarter mile towards home at a high rate of speed.

At 12:20 a. m. appellant appeared at the home of his brother-in-law, Eugene Boyer, who lived approximately 75 yards from the Pronkoskie's trailer. When he was unable to arouse Eugene Boyer quickly, he drove with his daughter Tina to the home of Ivan and Sophie Boyer, arriving at about 12:30 a. m. Returning to the trailer with appellant, the Boyers found their daughter dead on the bedroom floor.

Trooper Bower, who arrived at the trailer at about 1:50 a. m., testified that when he arrived at the scene he found the body of the victim in the bedroom on the floor. He observed a wound in the upper right shoulder and what appeared to be an exit wound in the upper left hand back area. He further observed a slug lying on the floor in the area of the exit hole. He testified that the living room had numerous broken or shattered pieces of glass. Trooper Keppick testified that he found four bullet holes in the wall which separated the west wall of the living room from the bedroom. He further testified that he found three bullets in the closet and one in the door jamb. He also testified as to a fifth hole, smaller than the others, which he concluded was not a bullet hole and for which no corresponding bullet was found.

Dr. Melvin Reitz, who examined the body at approximately 1:00 a. m., testified that the victim had died within an

hour of his arrival. He set the time of death at 12:00 a. m. with an outside range of 15 to 30 minutes either way and stated the cause of death was a single bullet which severed the aorta.

■ Appellant contends, and we agree, that Dr. Reitz's testimony did not place appellant at the trailer at the time of the shooting. However, our inquiry does not end there. Dr. Campbell J. Martin, a pathologist who examined the victim, concluded that, as a result of the wound, severing her aorta, she would have lost consciousness very rapidly, become unresponsive within one or two minutes of having been shot and been unable to make coherent statements for more than a minute at the outside limit. N.T. 216. Appellant told Ivan, Sophie and Eugene Boyer that he was talking to the victim just before she died and she said "Darling, I love you," "Goodbye," and "I've been shot. Go get Mom." N.T. 95, 102, 146.[2] In light of those statements and appellant's testimony that he saw or heard no gunshots or any other individual in or around the trailer, appellant's own words placed him at the trailer at the time of the murder. We believe the jury could have inferred appellant was present in the trailer at the time his wife was shot and that he indeed had shot her.[3]

■ Appellant also contends that the evidence that appellant fired the fatal shots is insufficient because the negative results of a paraffin test administered by a State Police chemist showed that no nitrates or nitrites were present on the casts taken from both of appellant's hands on

2. Appellant does not deny making these statements to his in-laws. Rather he stated at trial that he did not remember making them.

3. It is not disputed that the murder weapon, which was discovered seventy-two days after the murder in a wood dumping area one-half mile from the trailer and thirty-five feet from the highway, was a twenty-two caliber rifle owned by appellant. Appellant testified that he did not tell the police the gun was missing because his wife took the gun from him because he had killed her cat. N.T. 469. The jury, of course, could have chosen to disbelieve his explanation.

the night of the murder. N.T. 346. On this issue the chemist was called as a defense witness, after the Commonwealth had rested. Such an argument, *properly construed*, is in the nature of a motion for a new trial on the ground that the verdict is against the weight of the evidence. The decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. Absent an abuse of discretion its denial of such a motion will not be disturbed. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972). In exercising that discretion, the trial court had not only the defense testimony that no nitrates or nitrites were found, but also testimony elicited by the Commonwealth on cross-examination of the chemist that their absence did not rule out appellant's having fired the fatal shot under the circumstances of the case. N.T. 349. As this Court stated in *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976):

> "On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse*, 401 Pa. 242, 261, 164 A.2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan*, 436 Pa. 450, 456, 263 A.2d 734 (1970) cert. denied, 400 U.S. 882, 91 S.Ct. 127, 27 L.Ed.2d 120; *Commonwealth v. Schuck*, 401 Pa. 222, 228, 164 A.2d 13 (1960), cert. denied, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961)." *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973).

This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. *Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973); *Commonwealth v. Bailey*, 448 Pa. 224, 292 A.2d 345 (1972); *Commonwealth v. McFadden*, 448 Pa. 146, 292 A.2d 358 (1972); *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966).

■ Applying these standards, the verdict is not against the weight of the evidence. A negative result on a paraffin test is not dispositive on the question of whether Appellant fired the fatal shots from the murder weapon. This conclusion is not affected because appellant also introduced the testimony of Dr. Mary Willard that her independent test of the murder weapon established it left nitrates and nitrites on a subject's hands which could not be washed off even with a strong cleanser. Significantly, Dr. Willard was unable to conclude that the negative results of the paraffin test administered by the State Police chemist, Ms. Janice Roadcap, also called by defendant on this issue, ruled out appellant's firing the murder weapon on the night of the murder. Moreover, as noted, Ms. Roadcap testified that nitrates and nitrites can be rubbed off and that the paraffin mold test may give a negative result even though the subject of the test may have fired the weapon. N.T. 349. Even assuming the testimony of Dr. Willard conflicts with the testimony of Ms. Roadcap, the jury was free to accept Ms. Roadcap's opinion and to reject Dr. Willard's. *See Commonwealth v. Hicks*, 466 Pa. 499, 353 A.2d 803 (1976); *Commonwealth v. Bamber*, 463 Pa. 216, 344 A.2d 799 (1975).[4]

■ Although appellant presented no evidence tending to prove that the fatal shot was fired from the living room, as a matter of defense strategy on cross-examination, his counsel attempted to discredit the testimony of Trooper Keppick that the fifth hole was not a bullet hole. This was in an apparent attempt to establish a reasonable doubt as to whether the killing was willful, premeditated and deliberate by suggesting that the fatal shot was fired through the living room wall into the bedroom and thus the death

4. We are likewise unpersuaded by appellant's reliance on the negative results of testing for glass or ceramic particles on appellant's clothing. N.T. 345. Again, appellant's argument goes to the weight of the evidence and its review of its evaluation is within the trial court's discretion. The negative results of such a test are of minimal probative value particularly since there was no evidence admitted that the perpetrator of the murder would have been likely to come into contact with such ceramic or glass particles.

resulted from inadvertence, gross negligence or recklessness. In post-verdict motions appellant stated the verdict was insufficient generally and the evidence was insufficient to show that appellant fired the fatal shot. Appellant did not specifically contend either in his questions presented here or in the court below that the evidence was insufficient to prove a deliberate, willful and premeditated killing. This Court has repeatedly held that boiler plate post-verdict motions will not preserve allegations for appellate review. *Commonwealth v. Philpot*, 491 Pa. 598, 421 A.2d 1046 (1981); *Commonwealth v. Gamble*, 485 Pa. 418, 402 A.2d 1032 (1979); *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978). Accordingly, appellant's contention, articulated for the first time at oral argument, that the evidence was insufficient to establish the specific intent to kill, is waived.[5]

 In any event, appellant presented no affirmative evidence to support his theory. However, appellant con-

---

**5.** Such a claim is wholly without merit. At the time the murder was committed 18 Pa.C.S. § 2502 provided:

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate, and premeditated killing. . . .

(b) Murder of the second degree.—All other kinds of murder shall be murder of the second degree.

The Commonwealth has the burden of proving beyond a reasonable doubt the specific intent requirement for murder of the first degree, e.g. that the killing was willful, deliberate and premeditated. The specific intent to kill may be inferred from the use of a deadly instrument on a vital part of the body. *Commonwealth v. Bishop*, 489 Pa. 96, 413 A.2d 1031 (1980); *Commonwealth v. Butler*, 446 Pa. 374, 288 A.2d 800 (1972). The jury could have inferred from the Commonwealth's evidence that the fatal shot was fired from a twenty-two caliber rifle aimed at the victim's trunk rather than from a reckless shot fired through the living room wall. Had there been evidence introduced at trial tending to prove that the victim had been struck by an errant bullet passing through the wall, that evidence would tend to rebut the inference and it would be up to the jury to weigh the evidence. However, in light of the uncontroverted credible testimony of the Commonwealth's expert witness regarding the bullets fired into the wall, any challenge based on either the weight or the sufficiency of the evidence on the specific intent issue would have been wholly without merit.

tends the trial court erred in permitting Commonwealth Exhibit 13, a photograph of the west wall of the living room, to go out with the jury, absent cautionary instructions. Specifically, he argues no foundation was laid to show the photograph did not distort the relative sizes of the holes in the wall. Moreover, he maintains the insertion of dowels in four of the holes could have enlarged them and the jury should have been so instructed.

Pa.R.Crim.P. 1114 provides:

Material Permitted in Possession of the Jury

Upon retiring for deliberations, the jury shall not be permitted to have a transcript of any trial testimony, nor a copy of any written confession by the defendant, nor a copy of the information or indictment. Otherwise, upon retiring, the jury may take with it such exhibits as the trial judge deems proper.

Although the better procedure militates against allowing exhibits to go out to the jury that would require continuous expert opinion, *Commonwealth v. Hobson*, 484 Pa. 250, 398 A.2d 1364 (1979), the photograph in question does not fit within that rule. The jury was fully apprised that dowels had been placed in four of the holes. Moreover, the jury was capable without expert advice of understanding the weight and significance of the photographs as they related to the size of the holes in the wall. Finally, there is no evidence in the record supporting the conclusion that the photographs were taken from an angle which would distort the size of the hole.[6]

Accordingly, the judgment of sentence of the Court of Common Pleas is affirmed.

6. Defense counsel failed to object to the admission of the photograph or to request, at the time of admission, that cautionary instructions be given limiting the purpose of the photographs. Appellant thus waived any objection to the *admission* of the photographs. At the time the photos were sent out with the jury appellant attempted to limit the purpose for the admission of the photographs by way of an instruction. This request was properly denied.