546 A.2d 90

**COMMONWEALTH of Pennsylvania**

v.

**Edward HAMILTON, Appellant.**

Superior Court of Pennsylvania.

Submitted March 28, 1988.

Filed July 25, 1988.

John N. Salla, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before OLSZEWSKI, WATKINS and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for robbery and possession of an instrument of crime. Appellant first contends that trial counsel was ineffective for failing to call alibi witnesses. In addition, appellant contends that the trial court erred in (1) refusing to charge the jury that certain identification testimony should be received with caution; (2) improperly admitting hearsay testimony regarding the contents of certain police reports; (3) denying his motion for a mistrial after the prosecutor made a prejudicial remark during closing argument; (4) striking a prospective juror; and (5) denying his motion for a new trial on the ground that the verdict was against the weight of the evidence. For the reasons that follow, we affirm the judgment of sentence.

The charges in the instant case arose out of the robbery of a bar on May 7, 1985. On April 10, 1986, following a jury trial, appellant was found guilty of robbery and possession of an instrument of crime. Post verdict motions were

timely filed. Appellant then filed a *pro se* petition for withdrawal of counsel, alleging ineffectiveness of trial counsel. Present counsel was appointed, and supplemental post verdict motions were filed which raised, *inter alia,* ineffective assistance of counsel claims. The trial court thereafter denied all post verdict motions, and appellant was sentenced to a ten-to-twenty-year term of imprisonment on the robbery charge, and a concurrent term of two-and-one-half-to-five-years imprisonment on the remaining charge. This timely appeal followed.

 Appellant first contends that trial counsel was ineffective for failing to call alibi witnesses.[1] The determination whether counsel rendered ineffective assistance is arrived at through a two-prong test. First, we must ascertain whether the issue underlying the claim of ineffectiveness has arguable merit. *Commonwealth v. Buehl,* 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986). This requirement is based upon the principle that we will not find counsel ineffective for failing to pursue a frivolous claim or strategy. *Com-*

---

1. In a related argument, appellant contends that trial counsel was ineffective for preventing him from testifying on his own behalf. This issue is waived. "[I]neffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose ineffectiveness is being challenged no longer represents the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 277 n. 6, 372 A.2d 687, 695 n. 6 (1977). *See also Commonwealth v. Johnson,* 347 Pa.Super. 93, 96, 500 A.2d 173, 174–75 (1985).

Here, trial counsel filed timely post-verdict motions on appellant's behalf. Appellant then filed a *pro se* petition for withdrawal of trial counsel. Present counsel was appointed, and he filed supplemental post-verdict motions, which were considered and denied by the trial court. Appellant thus had the opportunity to raise his ineffective assistance of counsel claims in supplemental post-verdict motions. In his supplemental motions, however, appellant raised only the following claim of ineffective assistance of counsel:

> 3. The Defendant was denied effective assistance of counsel since the defense was alibi, and trial counsel failed to present testimony from alibi witnesses present in the courtroom during defendant's trial.

Motion in Arrest of Judgment and for a New Trial at 2. Appellant did not allege that counsel was ineffective for preventing him from testifying on his own behalf. Because appellant failed to raise this claim at the first opportunity, he has failed to preserve it for appellate review.

*monwealth v. Parker,* 503 Pa. 336, 341, 469 A.2d 582, 584 (1983). Second, if appellant's claim does have arguable merit, we must determine whether "the course chosen by counsel had some reasonable basis designed to serve the best interests of the client." *Commonwealth v. Buehl, supra* (citing *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605, 235 A.2d 349, 353 (1967)).

■ If our review of the record reveals that counsel was ineffective, we then must determine whether appellant has demonstrated that counsel's ineffectiveness worked to his or her prejudice. *Commonwealth v. Pierce,* 515 Pa. 153, 159, 527 A.2d 973, 976 (1987). To determine whether appellant was prejudiced, our Supreme Court adopted the test announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Commonwealth v. Pierce, supra.* Under *Strickland,* to prove that counsel's ineffectiveness resulted in prejudice, an appellant must show that the error was "so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable." *Strickland v. Washington, supra* at 686, 104 S.Ct. at 2063.

We have carefully reviewed the record (including the testimony of the proposed alibi witnesses) and the briefs submitted by the parties. For the reasons stated in the trial court opinion, we conclude that appellant's claim regarding alibi witnesses does not possess arguable merit. Accordingly, we affirm the trial court's disposition of this issue on the basis of the trial court's opinion.

Appellant next contends that the trial court erred in refusing to charge the jury, in accordance with *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), that the identification testimony of certain Commonwealth witnesses should be received with caution. After carefully reviewing the record and the briefs submitted by the parties, we conclude that the trial court has properly disposed of this contention in its opinion and, accordingly, we affirm the disposition of this issue on the basis of that opinion.

Appellant next contends that the trial court erred in admitting testimony regarding the contents of certain police reports. The facts related to this claim are as follows. Officer Jeffrey Murphy testified that on the night of the robbery he interviewed the complainant, Wanda Smith, who was the bartender on duty the night of the robbery. N.T. April 9, 1987 at 123–24. As a result of his investigation, Officer Murphy prepared two standard reports: a Form 75–48 "complaint" form, and a Form 75–130 "hold-up memorandum." *Id.* at 124–28. Each of these reports contained Ms. Smith's description of the man who had robbed her. Over the objection of defense counsel, Officer Murphy read the contents of his reports to the jury, including Ms. Smith's description of the robber. *Id.* at 122, 126–27, 131–32. On appeal, appellant maintains that the descriptions of him that were contained in those reports were inadmissible hearsay. We disagree.

In *Commonwealth v. Rounds*, 356 Pa.Super. 317, 514 A.2d 630 (1986), we noted that,

> The reason that [hearsay] is subject to exclusion is related to the fact that the *declarant* is not in court, and the safeguards of cross-examination afforded by the [Sixth] Amendment to the United States Constitution (to face one's accusers) are rendered nugatory.

*Id.*, 356 Pa.Superior Ct. at 320, 514 A.2d at 632 (citing McCormick on Evidence, § 246 at 585 (1972); Wharton's Criminal Evidence, § 265 at 6 (1972)), *allocatur granted.* *See also Commonwealth v. Sanders*, 260 Pa.Super. 358, 366, 394 A.2d 591, 595 (1978) (" *'The princip[al] reason for excluding hearsay is the danger that the declarant's credibility cannot be assessed.'* ") (quoting *Commonwealth v. Dugan*, 252 Pa.Super. 377, 386, 381 A.2d 967, 971 (1977) (Spaeth, J., Concurring)). When the declarant is present in court and available for cross-examination, however, testimony regarding prior statements made by the declarant is admissible. *Commonwealth v. Ballard*, 501 Pa. 230, 233, 460 A.2d 1091, 1092 (1983); *Commonwealth v. Rounds, supra; Commonwealth v. Dean*, 300 Pa.Super. 86, 89, 445

A.2d 1311, 1312–13 (1982); *Commonwealth v. Sanders, supra.*

■ Here, the descriptions of appellant that were contained in the police reports were based on information provided by the complainant, Wanda Smith. N.T. April 9, 1986 at 126, 127, 134. Ms. Smith was present in court, testified, and was subject to cross-examination. *Id.* at 36–71. Appellant thus had an opportunity to question Ms. Smith's with regard to the prior description, and the jury was able to assess her credibility. In light of the fact that the complainant was present and available for cross-examination, we conclude that the trial court did not err in permitting testimony by the investigating officer regarding the complainant's prior description of appellant. *See Commonwealth v. Ballard, supra; Commonwealth v. Rounds, supra; Commonwealth v. Dean, supra; Commonwealth v. Sanders, supra.*

Appellant next contends that the trial court erred in denying his motion for a mistrial after the prosecutor made a prejudicial remark during closing argument. During his summation, the prosecutor, in attempting to explain why appellant might choose to rob people whom he knew, stated that appellant was a "real scary person." Appellant argues that no evidence was presented during the trial to suggest that he was a "scary person." Appellant maintains that the necessary "effect of the statement ... was to bias the jury and create hostility towards [appellant] .... [and thus] the jury was unable to render a true verdict." Brief for Appellant at 18. We disagree.

A prosecutor, just as a defense attorney, must have reasonable latitude in presenting a case to the jury and *"must* be free to present his or her arguments with 'logical force and vigor.'" *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980) (quoting *Commonwealth v. Cronin,* 464 Pa. 138, 143, 346 A.2d 59, 62 (1975)). *See also Commonwealth v. D'Amato,* 514 Pa. 471, 489, 526 A.2d 300, 309 (1987). The prosecutor's remarks to the jury "may

contain fair deductions and legitimate inferences from the evidence presented during the testimony." *Commonwealth v. D'Amato, supra.* Moreover, "not every intemperate or uncalled for remark by the prosecutor requires a new trial." *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 430, 427 A.2d 1356, 1362 (1981), *allocatur denied.* Rather, reversible error exists only if the "unavoidable effect" of the language used "would be to prejudice the jury forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Id.* (citations omitted). *See also Commonwealth v. Beasley*, 504 Pa. 485, 492, 475 A.2d 730, 734 (1984). Finally, "the effect of such remarks is largely dependent on the atmosphere at trial, ... and the proper action to be taken, upon objection, is within the discretion of the trial court." *Commonwealth v. Youngkin, supra. See also Commonwealth v. D'Amato, supra,* 514 Pa. at 490–91, 526 A.2d at 309–10.

The prosecutor's reference to appellant as a "scary person" occurred in the following context:

Now, the biggest problem I have with this case and I think anybody would have is why would a person be so stupid as to rob a bar where he's a regular in and the bottom line is I don't know. I don't know. But we don't really have to know. There could be a lot of reasons.

There was a famous bank robber named Willy Sutton and he robbed banks and he escaped from jails. One of the jails he escaped from was right here in Philadelphia. And Willy Sutton was asked once why he robbed banks and he said because that's where they keep the money. Well, in this case, in this neighborhood at 11 o'clock in the evening, 11:40 in the evening, this bar is where they keep the money. The banks are closed. If you're looking for money this is one of the places to go at least.

So there is if you're going out to rob somebody, you're going to rob somebody with money, right. *It may be also that because the people know you they know that*

*you're a real scary person and it may be in your mind that they think they wouldn't have the nerve to tell the cops.*

N.T. April 10, 1986 at 29–30 (emphasis supplied).

■ In determining the effect that this isolated reference could have had upon the jury, we note initially that the prosecutor's remark was a legitimate inference from evidence presented regarding appellant's physical appearance. First, each of the three eyewitnesses testified that appellant was missing an eye. N.T. April 9, 1986 at 38, 64–65, 79, 99. This identifying characteristic was displayed to the jury. *Id.* at 65–66. In addition, the investigating police officer read into evidence the contents of his report, which was based upon his interview with one of the eyewitnesses, and which included, as part of the description of the robber, the fact that he had no front teeth. *Id.* at 133. This identifying characteristic was also displayed to the jury. *Id.* at 141. On this record, although it is true that the eyewitnesses did not *state* that appellant's physical appearance scared them, we cannot say that the prosecutor's common sense conclusion to that effect is an *unsupportable inference. See Commonwealth v. D'Amato, supra.* Moreover, because the reference may be seen to derive from appellant's physical appearance and not from an inherently prejudicial source—such as prior criminal conduct, for example—we cannot conclude that the "unavoidable effect" of the comment was to "prejudice the jury forming in their minds fixed bias and hostility toward the defendant." *See Commonwealth v. Beasley, supra; Commonwealth v. Youngkin, supra.* Accordingly, appellant is not entitled to a new trial on this ground.

Appellant next contends that the court erred in striking a prospective juror for cause when no good cause existed. We disagree. The determination whether a prospective juror should be disqualified rests in the sound discretion of the trial court and we will not reverse that decision in the

absence of a palpable abuse of discretion. *Commonwealth v. Colson*, 507 Pa. 440, 454, 490 A.2d 811, 818 (1985) (citing *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977)), *cert. denied* 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

■ Here, the juror in question, Charles Seiz, stated that he could hear only "if you talk loud, otherwise I can't hear too good." N.T. April 8, 1986 at 108. In addition, Mr. Seiz admitted that he had not heard all of the questions that were put to the voir dire panel as a group. *Id.* at 109–10. In explaining its reasons for granting the Commonwealth's motion to strike Mr. Seiz from the panel, the trial court stated: "Look, the man has a hearing problem and I really believe the man is not entirely equipped to be a juror, mentally equipped to be a juror. I'm going to strike him.... The man has difficulty hearing. He admitted it.... I had to holler at him." *Id.* at 111–12. The record also reveals that Mr. Seiz went to the wrong courtroom and sat with the wrong jury following a lunch recess. *Id.* at 112–13. In light of Mr. Seiz's hearing problem and his apparent disorientation, we cannot conclude that the trial court abused its discretion in striking him from the jury panel. *Commonwealth v. Colson, supra.* *Compare Commonwealth v. Brown*, 231 Pa.Super. 431, 436, 332 A.2d 828, 831 (1974) ("The presence of a juror with a physical impairment of such magnitude as to interfere with the juror's ability to hear and understand the presented testimony and evidence precludes a verdict by all jurors. Such a disability would render the juror incompetent to serve and would deny appellant's right to an impartial jury and a fair hearing.").

Appellant last contends that the verdict was against the weight of the evidence. Appellant argues that the identification testimony of the three eyewitnesses was so "conflicting, indefinite, and uncertain" that the verdict was based upon pure conjecture. In support of this argument, appel-

lant cites to inconsistencies regarding his height, weight, nickname, and whether the witnesses noticed that he was missing an eye. Because of these inconsistencies, appellant argues that he should be granted a new trial. We disagree.

■ The determination whether to grant a new trial on the ground that the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Before a trial court may grant relief on the ground that the verdict is against the weight of the evidence, " 'it must appear from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice....' " *Commonwealth v. Gamber*, 352 Pa.Super. 36, 45, 506 A.2d 1324, 1329 (1986) (quoting *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981)). Our review of a trial court's decision on a weight of the evidence claim is extremely limited. Our Supreme Court has noted that,

Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution.... While there may be some legitimacy for a trial court, who has also observed the witnesses as they testified, to consider the weight of the evidence and to that extent review the jury's determination of credibility, there is surely no justification for an appellate court, relying solely upon a cold record, to exercise such a function.

"On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact.... To do so would require an assessment of the credibility of the testimony and that is clearly not our function...." *Commonwealth v. Paquette*, 451 Pa. 250, 257, 301 A.2d 837, 841 (1973).

This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may

not be based on surmise or conjecture.... Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding....

*Commonwealth v. Farquharson,* 467 Pa. 50, 59–60, 354 A.2d 545, 550 (1976) (citations omitted). *See also Commonwealth v. Nelson,* 514 Pa. 262, 271 n. 3, 523 A.2d 728, 733 n. 3 (1987) (plurality opinion) (except in cases where penalty of death is imposed, appellate tribunal should not entertain challenge to weight of evidence because their examination is confined to "cold record."); *Commonwealth v. Pronkoskie, supra,* 498 Pa. at 251–52, 445 A.2d at 1206.

 Applying these standards to the case at bar, it is clear that the jury's verdict is not against the weight of the evidence. A review of the testimony of the eyewitnesses reveals that each *knew* appellant prior to the robbery, each had a clear view of appellant during the robbery, and each was certain that appellant was the perpetrator. N.T. April 9, 1986 at 36, 44–45, 74, 78, 90, 92, 100–01. Despite this evidence, appellant argues that, simply because there exist inconsistencies in the eyewitnesses' descriptions of him, the testimony of those eyewitnesses is not credible. We cannot agree that these minor inconsistencies render the identification testimony of these witnesses so unreliable as to make the verdict one based upon surmise or conjecture. *See Commonwealth v. Farquharson, supra. See also Commonwealth v. Stanley,* 453 Pa. 467, 309 A.2d 408 (1973); *Commonwealth v. Bennett,* 224 Pa.Super. 238, 303 A.2d 220 (1973). Accordingly, appellant is not entitled to relief on the ground that the verdict was against the weight of the evidence.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.