J-A06001-18

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL JAWON KENDRICK, | |
| Appellant | No. 86 WDA 2016 |

Appeal from the Judgment of Sentence Entered August 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013583-2014

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 18, 2018

Appellant, Paul Jawon Kendrick, appeals from the judgment of sentence of life-without-parole (LWOP) for first-degree murder, and a consecutive sentence of LWOP for conspiracy to commit first-degree murder.  He claims that the verdict is against the weight of the evidence, and that his sentence for conspiracy is illegal.  After careful review, we vacate Appellant's sentence for conspiracy and remand for resentencing, but affirm Appellant's sentence for first-degree murder.

The trial court summarized the facts adduced at trial as follows:

> On July 31, 2014, at approximately 11:45 pm, Antone Marshall was playing basketball on the basketball court located in North View Heights Housing Project with Maurice Freeman, Tyrea Harper, CJ Pac and an individual who [was] only kn[o]w[n] by the

_____

[*] Retired Senior Judge assigned to the Superior Court.

name of Manny. At approximately 12:30 am on August 1, 2014, Marshall took a break from playing basketball to have a cigarette when two light-skinned African American[] males appeared, both of whom appeared to be wearing white t-shirts and one of whom was wearing shorts and the other sweatpants. Marshall noticed that both of these individuals possessed a handgun. These individuals asked to play basketball. The individual who played basketball against Manny had a fisherman's hat on and during the course of the basketball game, dropped his gun on the basketball court. Marshall described this individual as being anywhere from five foot nine to approximately six feet tall, saying that everybody appeared short to him because he is six foot three and one-half. He identified the other individual without the hat as being approximately five foot seven. When this basketball game was over, Marshall, Tyrea Harper and CJ Pac went on their way down to Penfort Street while Maurice Freeman and Manny Harrison went to a building on Hazlett Street where Freeman was apparently staying. As Marshall approached his residence, he heard a number of gunshots[,] but he did not know who had been hit[,] or where they had been hit.

Marshall was interviewed by the police in the early morning hours of August 1, 2014, and based upon the information that the police had obtained during the course of their investigation, they put together a photo array and Marshall identified [Appellant] as one of the two individuals who approached them at the basketball court and who had weapons on them. Tyrea Harper was playing basketball with Marshall and the others when he saw the two light-skinned African American males approach, both of whom were wearing white tee-shirts. He also saw a gun that was being passed between the two of them. They asked to play basketball and they played one game against Manny and Manny won. At the conclusion of that game, one of these two individuals said that if you were not from Northview then you are going to get hit. He then asked [where] Freeman was from and Freeman said he was from Arlington. After this discussion everyone left the basketball court but left in separate directions since Harper and Marshall headed toward Harper's sister's house which was on Penfort, while Manny and Maurice headed toward Hazlet Street. They then heard [a] gunshot and then turned around to see the two light-skinned African Americans running away. Marshall was interviewed by the police ... approximately five days later and was presented with a photo array and he identified the shooter as being [Appellant].

Roxanne Steiner was living with her sister on Hazlet Street in the Northview Heights housing project and although she had never personally met [Appellant], she had seen him at least thirty times in that housing project. In the late hours of July 31, 2014, she went to the 7-11 Store in Downtown Pittsburgh to get some food items. When she got back to Northview Heights she heard that Freeman had been shot and she went to Allegheny General Hospital to see what his condition was. She eventually returned at approximately 6:00 am on August 1, 2014. During the course of the police investigation, they went to the security office and viewed a number of videotapes taken from the surveillance cameras[,] which were placed throughout the Northview Heights project. The police made copies of these tapes and on August 16, 2014, showed Steiner the tapes which showed two individuals in white t-shirts and she was able to identify one of those individuals as [Appellant].

Trial Court Opinion (TCO), 3/8/17, at 3-5.

The Commonwealth charged Appellant with criminal homicide, 18 Pa.C.S. § 2501(a); conspiracy to commit homicide, 18 Pa.C.S. § 903(a)(1); and person not to possess a firearm, 18 Pa.C.S. § 6105. The trial court granted Appellant's pre-trial motion to sever the firearm offense, which is not a subject of the instant appeal.[1] Appellant was subsequently tried by a jury, which returned a verdict of guilty on both counts on May 25, 2015. Specifically, the jury found Appellant guilty of first-degree murder, 18 Pa.C.S. § 2502(a), and conspiracy to commit first-degree murder. On August 4, 2015, the trial court sentenced Appellant to a mandatory LWOP sentence for first-degree murder, and a consecutive sentence of LWOP for conspiracy.

Appellant filed a timely post-sentence motion, in which he challenged the weight of the evidence, which the trial court considered at a post-sentence

_____

[1] The firearm offense was transferred to CP-02-CR-0006355-2015.

hearing held on November 18, 2015. Ultimately, however, the court denied Appellant's post-sentence motion on December 10, 2015.

Appellant filed a timely notice of appeal on January 8, 2016, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on February 12, 2016. The trial court did not issue its Rule 1925(a) opinion until March 8, 2017. Appellant now presents the following questions for our review:

1. Whether the trial court abused its discretion in denying the motion for a grant of a new trial when the verdict was contrary to the weight of the evidence?

2. Whether the [LWOP] sentence for criminal conspiracy was illegal because it exceeded the statutory limitations?

3. Whether the sentence for criminal conspiracy was illegal based upon double jeopardy concerns when the sentence of criminal conspiracy should have merged into the sentence of first[-]degree murder, which was based upon a criminal conspiracy theory?

Appellant's Brief at 5.

Appellant first argues that the trial court abused its discretion in denying his post-sentence motion for a new trial based on the weight of the evidence.

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Commonwealth v. Jackson, 506 Pa. 469, 475, 485 A.2d 1102, 1104 (1984). An appellate court cannot substitute its judgment for that of the finder of fact. Commonwealth v. Pronkoskie, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we can only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Commonwealth v. Whitney, 511 Pa. 232, 239, 512 A.2d 1152, 1155 (1986).

Commonwealth v. Hawkins, 701 A.2d 492, 501 (Pa. 1997).

Furthermore:

- 4 -

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Appellant alleges that inconsistencies in the testimony of Marshall, Harper, and Steiner, both internally and in relation to each other, demonstrate that the verdict was "so contrary to the evidence as to shock one's sense of

justice." Hawkins, 701 A.2d at 501. Appellant does not claim that the trial court acted as "a result of partiality, prejudice, bias or ill-will." Clay, 64 A.3d at 1055. Rather, he asserts that the "verdict in this case would have shocked the conscience of any normal judge who heard the testimony because the evidence [of Appellant's guilt] was so tenuous, vague, and uncertain." Appellant's Brief at 23-24. Thus, Appellant essentially argues that the trial court's decision to deny his weight-of-the-evidence claim was "manifestly unreasonable." Clay, 64 A.3d at 1055. More specifically, Appellant challenges whether the evidence was fundamentally inconsistent as to his identity as a participant in the murder of Freeman.

The Commonwealth acknowledges the inconsistencies highlighted in Appellant's brief, but contends that those inconsistencies are not so dramatic as to "shock one's sense of justice." Hawkins, 701 A.2d at 501. Rather, the Commonwealth argues that the inconsistencies were resolvable by the jury, and that the jury's verdict was not shocking since Marshall, Harper, and Steiner corroborated each other's identifications of Appellant.

After reviewing the surveillance video, the testimony of Marshall, Harper, and Steiner, the trial court's opinion, and the parties' briefs, we are unconvinced by Appellant's argument that the trial court abused its discretion by denying his post-sentence, weight-of-the-evidence motion for a new trial. The jury was free to disregard the observed discrepancies, and accept testimony that directly demonstrated Appellant's participation in the murder of Freeman. Most importantly, the jury was free to credit Steiner's

identification of Appellant as the person seen in the surveillance videos firing his gun at Freeman. Inconsistencies in the evidence concerning her location at the time of the shooting, as noted by Appellant, were not substantial issues in this case, especially since Steiner's identification of Appellant did not result from direct observation at the time of the shooting, but from her viewing of the surveillance video during the course of the subsequent investigation. Likewise, discrepancies between Harper's and Marshall's descriptions of Appellant's clothing, and their recollections of whether Appellant or his companion played the one-on-one basketball game, were tangential matters largely unrelated to the critical import of their testimony as a whole. Both men positively identified Appellant as being present and armed at the basketball court immediately prior to the shooting of Freeman. Marshall testified that Appellant or his companion threatened Freeman for being on their 'turf.' Soon thereafter, surveillance video shows Freeman's murder, from which Steiner positively identified Appellant as one of the shooters. In these circumstances, we find no abuse of discretion in the trial court's determination that the verdict did not "shock one's sense of justice." Hawkins, 701 A.2d at 501. Accordingly, Appellant's weight-of-the-evidence claim is meritless.

Next, Appellant contends that his sentence for conspiracy is illegal. First, he argues that his consecutive LWOP sentence for conspiracy exceeds the statutory maximum for that offense. Second, he maintains that his consecutive LWOP sentence for conspiracy violates double jeopardy principles

and, therefore, it should merge with his LWOP sentence for first-degree murder.

"A challenge to the legality of [a] sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction." Commonwealth v. Robinson, 931 A.2d 15, 19–20 (Pa. Super. 2007). "Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is de novo and our scope of review is plenary." Commonwealth v. Wolfe, 106 A.3d 800, 802 (Pa. Super. 2014) (quoting Commonwealth v. Akbar, 91 A.3d 227, 238 (Pa. Super. 2014)), aff'd, 140 A.3d 651 (Pa. 2016).

> The phrase 'illegal sentence' is a term of art in Pennsylvania Courts that is applied to three narrow categories of cases. Those categories are: "(1) claims that the sentence fell 'outside of the legal parameters prescribed by the applicable statute'; (2) claims involving merger/double jeopardy; and (3) claims implicating the rule in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)."

Commonwealth v. Munday, 78 A.3d 661, 664 (Pa. Super. 2013) (some internal citation omitted). On their face, Appellant's illegal-sentencing claims fall into the first and second categories, respectively.

As to Appellant's first illegal-sentencing claim, the Commonwealth concedes that "the [LWOP] sentence imposed [for Appellant's] conspiracy conviction was illegal in that it exceeded the maximum sentence allowable by law." Commonwealth's Brief at 21. We agree.

> [A] person who has been convicted of attempt, solicitation or conspiracy to commit murder, … where serious bodily injury results[,] may be sentenced to a term of imprisonment which

- 8 -

shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment[,] which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c) (emphasis added). An LWOP sentence clearly exceeds the 40-year maximum sentence prescribed by Section 1102(c). Thus, we are compelled to vacate Appellant's LWOP sentence for conspiracy, as it is patently illegal.

Nevertheless, we must still address Appellant's final issue because, if meritorious, the merger doctrine would effectively prohibit the trial court from imposing a new sentence on Appellant for his conspiracy conviction. See Commonwealth v. Kozrad, 499 A.2d 1096, 1099 (Pa. Super. 1985) (recognizing that "[w]hen crimes merge for sentencing purposes, the [only] one for which a defendant may be sentenced is the most serious, i.e., the crime which carries the greatest maximum penalty"); see also 42 Pa.C.S. § 9765 ("Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense."). For the following reasons, we conclude that remand for resentencing is appropriate, because it is clear that first-degree murder and conspiracy to commit first-degree murder are not crimes that merge for sentencing purposes.

Section 9765 [of Title 42] provides:

> § 9765. Merger of sentences
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes

> merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S. § 9765.
>
> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

Commonwealth v. Baldwin, 985 A.2d 830, 833 (Pa. 2009).

An analysis of the statutory elements of first-degree murder and the crime of conspiracy demonstrate that it is not the case that "all of the statutory elements of one of the offenses are included in the statutory elements of the other." Id. The statutory elements of first-degree murder are: "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." Commonwealth v. Martin, 101 A.3d 706, 718 (Pa. 2014); see also 18 Pa.C.S. §§ 2501(a)-(b), 2502(a). The elements of conspiracy are defined by Section 903(a):

> (a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

As these definitions plainly demonstrate, the crime of first-degree murder does not require proof of an agreement with another person to commit first-degree murder, and the crime of conspiracy to commit first-degree murder does not require proof that a human being was unlawfully killed. Therefore, each crime requires proof of an element that the other does not; as such, neither the elements of first-degree murder nor conspiracy to commit first-degree murder is fully subsumed in the other. See Commonwealth v. Miller, 364 A.2d 886, 886 (Pa. 1976) ("It has long been the law of this Commonwealth that the crime of criminal conspiracy does not merge with the completed offense which was the object of the conspiracy."). Consequently, the crimes of first-degree murder and conspiracy to commit first-degree murder do not merge for sentencing purposes. As such, Appellant's final claim lacks merit. Accordingly, we are compelled to remand for resentencing on Appellant's conviction for conspiracy to commit first-degree murder. However, we otherwise affirm Appellant's sentence for first-degree murder.

Judgment of sentence affirmed in part, vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2018

- 11 -