J-S08039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :                PENNSYLVANIA
                                     :

              v.                  :

                                     :

MONTAQUE J. WEST              :
                                     :

           Appellant      :    No. 3933 EDA 2017

Appeal from the Judgment of Sentence November 1, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006027-2016

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:         **FILED FEBRUARY 28, 2019**

Appellant Montaque J. West appeals from the Judgment of Sentence entered in the Court of Common Pleas of Philadelphia County on November 1, 2017, at which time he was sentenced to an aggregate prison term of eighteen (18) months to thirty-six (36) months along with a consecutive term of five (5) years of probation following his convictions of Burglary, Conspiracy, Theft by Unlawful taking, and Receiving Stolen Property.[1]   After review, we affirm.

The trial court set forth the relevant facts herein as follows:

On February 2nd, 2016, around 8:15 p.m., the Complainant, Tuyen Dao, found his home at 1742 McClellan Street in disarray. On the first floor, Dao noticed that a stub and hammer were "messed up" and that there were coins on the floor. Dao then ran to the second floor and found that his safe was missing. The gray keypadded safe was sixty centimeters high. It contained $3,000.00, two necklaces, three pendants, earrings, documents,

---

[1] 18 Pa.C.S.A. §§ 3502; 903; 3921; 3925, respectively.

---

*   Former Justice specially assigned to the Superior Court.

and a Honda key. The Complainant's son (Huy Dao) told the police that his bedroom window was shut and his bedsheets were clean when he left home earlier that day. However, after arriving home, Huy found the window open and dirty footprints on his sheets and pillow.

Prior to the incident, Huy Dao had seen a red sedan four or five times parked about 20 feet from his house around 3:00 or 5:30 p.m. between January 26 and February 2, 2016. The car had tinted windows, parked in different spots, and departed when he left the house (or shortly thereafter).

Later that night, at approximately 9:25 p.m., Officer Vincent Ficchi saw a red Pontiac G6 parked on the 2100 block of Gould. He observed three black males coming off the steps of 2113 Gould Street (a vacant property) carrying what he believed was a television towards the red Pontiac. A jean jacket covered the object. Ficchi circled the block and observed the red Pontiac fail to stop at a stop sign while traveling north on Gould Street. When Ficchi and his partner (Officer Criscillo) conducted a traffic stop, the Appellant was driving the vehicle. Officer Ficchi saw a safe in the backseat of the car and called for back-up. Once back-up arrived, Officer Ficchi notified Detectives that the safe appeared to be in a "suspicious condition." More specifically, Ficchi told detectives that the top of the safe was opened and cracked, that wires were hanging out of the front of the safe, and that the crack was large enough to stick a hand inside. Officer Ficchi also saw through the crack what he believed to be a Honda key fob. At that point, Southwest Detectives were unaware that a burglary or robbery involving a missing safe had occurred, so Officer Ficchi let the Appellant go. However, the Complainant later confirmed that the safe was his, that he did not know the Appellant or co-defendants, and that he did not give them permission to enter his home or possess the safe.

Trial Court Opinion, filed 7/17/18, at 2-4 (footnotes of citations to notes of testimony omitted).

Following a nonjury trial, Appellant was convicted of the above-stated offenses, and he subsequently filed his "Motion for Extraordinary Relief" on October 4, 2017, wherein he asserted, *inter alia*, the verdicts were against the weight and sufficiency of the evidence and requested a new trial. On

November 1, 2017, the trial court imposed the aforementioned sentence, and Appellant filed a timely notice of appeal on November 27, 2017.

On January 23, 2018, the trial court entered its Order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of matters complained of on appeal. On February 10, 2018, Appellant filed his concise statement, and the trial court filed its Opinion pursuant to Pa.R.A.P. 1925(a) on July 17, 2018.

In his brief, Appellant presents the following Statement of the Questions Involved:

> A.    Were the verdicts against the weight of the evidence for Burglary, Conspiracy, (Objective-Burglary) and Theft, as [ ] Appellant was in Langhorne, PA and Bristol, PA during the time the burglary took place in Philadelphia, PA?
>
> B.    For the foregoing reasons was the evidence insufficient to sustain the guilty verdicts for Burglary, Conspiracy (Objective-Burglary) and Theft, as [ ] Appellant was never present at the scene of the burglary?
>
> C.    Was the evidence insufficient to sustain the guilty verdict for RSP, as *even if* Appellant was the driver of the car during the initial car stop that took place approximately four hours after the burglary and miles away, there is no evidence whatsoever that Appellant had any knowledge that the safe was in the back seat and/or was stolen, and that at most the Commonwealth established Appellant's mere presence with proceeds that were in the possession of at least two others?

Appellant's Merit Brief at 7 (emphasis in original).

Appellant first alleges the verdicts were against the weight of the evidence. Specifically, he asserts the uncontested evidence at trial evinces he was not present at the scene of the crimes.

To preserve a challenge to the weight of the evidence, a litigant must raise the claim: (1) orally on the record at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion. Pa.R.Crim.P. 607. Failure to do so results in waiver of the claim for purposes of appellate review. **Commonwealth v. Mack**, 850 A.2d 690, 694 (Pa.Super. 2004) (stating the failure to raise a weight claim before trial court results in waiver, even where trial court addresses claim on merits). Here, the Commonwealth's contention to the contrary, **see** Commonwealth's Brief at 8/10, Appellant preserved his challenge to the weight of the evidence by raising this claim before sentencing in his written Motion for Extraordinary Relief. **See** Motion, 10/4/17, at ¶ 9. Therefore, we proceed to review its merits and in doing so are mindful that this Court's review of a challenge to the weight of the evidence supporting the verdict is well-settled:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly

exercised and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 610 Pa. 264, 276, 18 A.3d 1128, 1135-36

(2011) (citations and internal quotation marks omitted).

Herein, the trial court provided the following analysis of Appellant's

challenge to the weight of the evidence:

> The Appellant initially alleges that his Conspiracy, Burglary, and Theft verdicts were against the weight of the evidence because he was in Langhorne and Bristol, PA when these crimes occurred. The [c]ourt disagrees.
>
> It is well-established that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Champney, 832 A.2d 403, 408; 574 Pa. 435, 444 (2003) [citing Commonwealth v. Johnson, 668 A.2d 97, 101 (Pa. 1995)]. The appellate court may not "substitute its judgement for that of the finder of fact." Id. [citing Commonwealth v. Pronkoskie, 445 A.2d 1203, 1206; 542 Pa. 384, 394 (1982)]. Hence, an appellate court may reverse the lower court's verdict based on the weight of the evidence only if "[the verdict] is so contrary to the evidence as to shock one's sense of justice." Id. [citing Commonwealth v. Hawkins, 701 A.2d 492, 500; 549 Pa. 352, 368 (1997)]. Finally, where the trial court has already ruled on the weight of the evidence, the "appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." Id. Rather, review is limited "to whether the trial court palpably abused its discretion in ruling on the weight of the claim." Id. [citing Commonwealth v. Tharp, 830 A.2d 519, 528 (Pa. 2003)]. With these principles in mind, we will now consider the Appellant's first allegation.
>
> The Appellant's first allegation is that his Conspiracy, Burglary, and Theft convictions were against the weight of the evidence because he was in Langhorne and Bristol, PA at the times the crimes were committed. The [c]ourt disagrees. Irrespective of the Appellant's alibi, there was sufficient direct and/or circumstantial evidence that the Appellant was a key perpetrator of the criminality. His role in the criminality is apparent when we consider the testimonies of all of the witnesses. On the one hand, the Commonwealth presented the testimonies of Tuyen Dao, Huy

Dao, and Officer Vincent Ficchi. On the other hand, the Appellant presented the testimonies of Officer Matthew Stankiewicz, himself, Tracy Lorenz, and Kim Raiani.

The first Commonwealth witness was the Complainant, Tuyen Dao. Tuyen Dao testified that he returned home on February 2, 2016, to find the first floor in disarray and his safe missing. Dao also testified that he did not know the Appellant or his co-defendants, nor did he give them permission to be in his home or possess his safe. Finally, he testified that the safe Officer Ficchi found in the Appellant's possession was his.

The Commonwealth's second witness was the Complainant's son, Huy Dao. Dao testified that he saw a red sedan parked near his home about four or five times between January 25th and February 2nd. He also testified that he observed the same red sedan parked approximately twenty feet from his home on the day of the February 2nd burglary.

The final Commonwealth witness was Officer Vincent Ficchi. Officer Ficchi testified that he saw the **Appellant** and two other men carrying a large object covered with a jean jacket to a red Pontiac G6. Officer Ficchi further testified that he saw the driver of the red Pontiac (later identified as the **Appellant**) fail to stop at a stop sign after circling the block. Ficchi stated that he saw the safe (covered with the jacket) in the backseat when he stopped the vehicle. Lastly, he testified that the safe was cracked open at the top and had wires hanging out the front.

In this case, the Appellant presented an alibi defense. The Appellant's first witness was Detective Stankiewicz. Detective Stankiewicz testified that the burglary could have occurred at any time between 5:00 and 7:30 p.m. on February 2nd. The Appellant then testified as his second witness in support of his alibi defense. He testified that he had picked up his children from daycare at 5:55 p.m. on February 2nd, that he then picked up his girlfriend from work in Langhorne at 7:00 p.m., and that he went home to 623 Race Street in Bristol where he spent the rest of the night.

The Appellant's third witness was Tracy Lorenz. Lorenz was the Kindercare director, who confirmed that the daycare had a sign-in sheet on February 2, 2016. However, although she confirmed that there was a sign-in sheet, **she could not authenticate the Appellant's signature on the sheet**.

The Appellant's final witness was Kimberley Raiani, a private investigator. Raiani testified that she calculated the time it took to travel from the daycare center to the Appellant's girlfriend's workplace, to his home at 623 Race Street, and then to the

Complainant's home. She further testified that it took 15 minutes, 17 minutes, and 44 minutes, respectively, to travel to each location.

The [c]ourt took into consideration the testimonies of Tuyen Dao, Huy Dao, Officer Ficchi, Detective Stankiewicz, the Appellant, Tracy Lorenz, and Kimberley Raini, and found the testimonies of Tuyen Dao, Huy Dao, and Officer Ficchi to be more credible and persuasive than the Appellant's. More specifically, the [c]ourt did not find the Appellant's testimony that he was elsewhere at the time of the burglary to be credible. For one thing, the Appellant testified that he picked up his children from daycare at 5:55 p.m., but Detective Stankiewicz testified that the burglary could have occurred at any time between 5:00 and 7:30 p.m. Therefore, the Appellant's alibi did not establish that he could not have committed the burglary.

**Furthermore, the Appellant's inconsistent testimony also diminished his credibility. The Appellant testified that he did not know his co-Defendants Kuron Davis or Khaleef Groober, but he had told the police earlier (when arrested) that he knew they had been bailed out and that the suspect vehicle was a Red Pontiac G6. When questioned further by police about Davis and Groober, the Appellant stated that he wouldn't "tell on his friends." After confirming that he made these statements to police, the Appellant changed his story again, stating that he did not know the co-Defendants. He later testified that he knew Robert Reed was "the one who took the safe out of the house." The Appellant's unique knowledge of the facts surrounding the burglary, his body language and demeanor, and his inconsistent statements about his relationship with his co-Defendants led the [c]ourt to conclude that his testimony lacked credibility.**

Notwithstanding the Appellant's lack of credibility, even if the Appellant were not present during the actual burglary, the evidence suggests that he was guilty through conspiratorial liability when one considers the totality of the circumstances. The evidence in the record was that the Appellant had carried the safe with two other men to a red Pontiac, that he drove the car with the safe in the backseat, and that the same Pontiac had been seen outside the Complainant's home in the week before the burglary. Given this evidence, the verdict was not against the weight of the evidence, and the Appellant's first claim should be dismissed.

Trial Court Opinion, 7/17/18, at 4-8 (footnotes containing citations to notes of testimony omitted) (emphasis in original).

Following a review of the evidence, including the complete notes of testimony, we find no abuse of discretion on the part of the trial court and conclude Appellant is entitled to no relief on this claim.

Appellant's final two questions pertain to the sufficiency of the evidence. Appellant contends the Commonwealth presented insufficient evidence to support his convictions because he was not present at the scene of the burglary, or at most, the evidence established only his "mere presence," not his knowledge that a stolen safe was in the backseat of the vehicle. Appellant's Brief at 18-19. Where an appellant presents such challenges,

> [t]he standard we apply in reviewing the [claim] is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Vargas*, 108 A.3d 858, 867-68 (Pa.Super. 2014) (citation omitted).

Although he characterizes these issues as challenges to the sufficiency of the evidence, in his two-paragraph argument in support of his third claim Appellant reiterates his weight of the evidence challenge; he essentially asks

this Court to reweigh the testimonial evidence in his favor and ignore the inferences the trial court drew therefrom. Appellant's Brief at 20. The trial court obviously found the testimony of Tuyen Dao, Huy Dao, and Officer Ficci to be credible and chose not to believe Appellant's version of the events. It was within the province of the trial court as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Appellant guilty. **Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa.Super. 2006), *appeal denied*, 590 Pa. 655, 911 A.2d 933 (2006).

Moreover, in the two-paragraphs of argument he devotes to his second claim in his appellate brief, Appellant makes boilerplate assertions that the Commonwealth presented no evidence to sustain the crimes of which he was convicted without stating specifying exactly what elements of those crimes were not proven with specificity. Appellant's Brief at 18-19. Accordingly, we find that he has waived this claim. ***See Commonwealth v. Manley***, 985 A.2d 256 (Pa.Super. 2009) (sufficiency challenge waived where appellant's argument section of brief did not specify which elements of offenses were unproven). Therefore, we find no merit to Appellant's challenges to the sufficiency of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/28/19